## DeLashmutt *v.* Sellwood.

Mortgagee in Possession.—Possession taken by a mortgagee, with the mortgagor's consent, after foreclosure and a sale of the mortgaged premises, and execution of a sheriff's deed to the former as purchaser at such sale, does not constitute him a mortgagee in possession, with the right to retain the same until the debt is paid. The consent of the mortgagor given after being thus divested of all interest in, and control over the property, is simply a nullity.

Judgment Lien Docket.—The omission to enter the names of all the judgment debtors under the proper heading in the judgment docket does not prevent the judgment from becoming a lien on the real property of those whose names are properly entered in such docket.

Dollars and Cents—What Marks Denote.—Any mark commonly understood, and ordinarily employed in business transactions, to denote the division of figures, obviously representing money, into dollars and cents, is sufficient for that purpose, in judicial records, or other official documents. Of this character are the lines and spaces in the ruled money columns of regular books of account, or official records similarly prepared.

Mortgage Lien—Subsequent Judgment Creditor.—The foreclosure of a prior mortgage lien upon real property, without making a subsequent judgment lien creditor a party, in nowise affects the rights of the latter, and a sale under his judgment conveys the legal title to the purchaser, notwithstanding the fact of a previous sale of the same premises having taken place under the decree of foreclosure.

IDEM—BANKRUPTCY.—The rights of the purchasers, under said sales respectively, are not affected by the proceedings in bankruptcy against the mortgagor and judgment debtor, commenced over a year after the last of such liens attached to the premises, and the assignee in bankruptcy has not intervened, either to redeem the premises or oppose the enforcement of such liens, or have the proceedings to enforce the same transferred to the court in which the bankruptcy proceeding is pending.

PRACTICE—EVIDENCE.—A tax deed, although regular on its face, offered in evidence by a party, together with the assessment and delinquent tax rolls upon which it is based, and which disclose a state of facts which demonstrate its invalidity, is properly rejected by the court.

DOCUMENTARY EVIDENCE—COURT DETERMINES EFFECT AND ADMISSIBILITY.—Where, at a trial by a jury, no evidence for the defendant is admitted, and plaintiff establishes a *prima facie* case upon documentary evidence, whose effect as well as admissibility is a proper subject for the determination of the court, an instruction to the jury to return a verdict for the plaintiff is both correct and proper.

APPEAL from Multnomah County.

On the 1st day of February, 1875, C. M. Carter borrowed $3,000 from John Sellwood, the appellant, and gave his promissory note therefor. At the same time, to secure the payment of said note, Carter and his wife joined in executing a mortgage to Sellwood on blocks 35, 47 and 58, in Carter's addition to the city of Portland, Oregon, which mortgage was duly recorded in Multnomah county, in which said premises are situated, on the 5th day of the same month. On the 14th day of February, 1876, Geo. P. Gray recovered a judgment against said Carter and one W. P. Doland in the circuit court for said Multnomah county, for the sum of $705 50, which was docketed in the judgment docket of said court on the same day it was rendered. Afterwards, Sellwood brought a suit in said court against Carter and wife, and Gray, and other judgment creditors, to foreclose his mortgage, and obtained a decree of foreclosure and sale on February 21st, 1877. Gray was not served with the summons and did not appear. The three blocks

were sold upon this decree, and Sellwood became the pur-
·chaser. The sale was confirmed and he received a deed for
the premises from the sheriff, executed August 18th, 1877.
January 4th, 1878, Gray had an execution issued on his
judgment, upon which the property was again sold by the
sheriff, and the respondent, DeLashmutt, became the pur-
chaser. This sale was also duly confirmed, and a deed ex-
ecuted by the sheriff to DeLashmutt on May 10th, 1878.
DeLashmutt afterwards brought this action against Sell-
wood, who had obtained possession of the property, to re-
cover the same.

The complaint is in the usual form. The answer of Sell-
wood, in addition to denials of all material allegations in
the complaint, and a plea of title in himself, contains a fur-
ther separate defense, in which the facts above are sub-
stantially alleged, and concludes as follows: " That by vir-
tue of said mortgage, foreclosure, proceedings, and sheriff's
deed, and with the consent of the said Charles M. Carter,
this defendant is in possession of the premises."

The plaintiff demurred to this defense for insufficiency,
and the court sustained the demurrer. The cause was then
tried by a jury, and under the instruction of the court a
verdict was found for the plaintiff. From the judgment
rendered on such verdict the defendant Sellwood appealed,
and assigned as error: 1, The decision sustaining said de-
murrer; 2, The admission of the judgment docket offered
by plaintiff to prove the entry therein of the Gray judg-
ment; 3, The rejection of the record of the foreclosure
proceeding and sheriff's deed to Sellwood; The record of a
proceeding in bankruptcy, in the U. S. district court for
Oregon, against said Carter and one Estes, and a quit-claim
deed for said premises executed to Sellwood, by the assignee
of the bankrupts, on August 30th, 1879; Also, the assess-

ment and delinquent tax rolls of Multnomah county for 1875, and a tax deed for said block 47 to Sellwood, executed December 14th, 1880; all of which were offered by the defendant, and the ruling of the court duly excepted to by him, in each instance. ·

. *W. W. Chapman,* for appellant.

*Seneca Smith* and *H. B. Nicholas,* for respondent.

By the Court, Watson, C. J.

The question first presented for us to determine is whether the demurrer to the further separate defense in the answer was properly sustained. . Appellant claims that the facts stated in this defense show that he was a mortgagee in possession, with the mortgagor's consent, after default in payment of the debt secured by the mortgage, and within the rule laid down by this court, in *Roberts* v. *Sutherlin,* 4 Or., 219. There is no analogy, however, between the essential facts in the two cases. In the case cited, where an action similar to the present had been brought by the mortgagor against the assignee of the mortgagee in possession, the defense which the court held good on demurrer was that, after default in payment, the defendant entered into the possession of the premises with the full assent of the plaintiff, and that there was still due on the mortgage the sum of about four thousand dollars. The court construed the facts thus alleged as implying an agreement that the assignee of the mortgagee might retain the possession so acquired until his debt should be satisfied; and held such agreement valid, and possession under it a good defense to the action. But it does not appear from the allegations in the separate defense in the case here, that the appellant was let into possession before the execution of the sheriff's deed to him, under the decree of foreclosure and sale of February 21st,

1877; or that he ever got possession with the mortgagor's consent, or even had his consent to remain in possession, until after that date. As the mortgagor had no interest in or control over the property, at the date of his alleged consent to the possession thereof by the mortgagee, it is self-evident that he at that time had no power to make a valid or binding contract for the possession, such as appellant would have the court imply from the facts stated in the separate defense in his answer. The appellant plainly entered into possession as a purchaser at sheriff's sale, which he had a perfect legal right to do, and the consent of the mortgagor was entirely unnecessary and wholly devoid of meaning or effect. The appellant took the title itself, as against the mortgagor, in fee, and not the mere possession, to be held until his debt should be paid, and then be re-delivered to the mortgagor, freed and discharged from the incumbrance created by the mortgage.

The facts set forth in the separate defense cannot be made to sanction the inference which appellant seeks to deduce from them, i. e., an agreement between the mortgagor and mortgagee that the latter shall retain possession until the amount due on his mortgage shall be paid, accompanied by actual possession under such agreement. But it seems to us needless to pursue the discussion upon this point any further. So plain a proposition needs no explanation.

The next question is raised by the appellant's exception to the ruling of the circuit court, admitting the judgment docket in evidence to show the entry of the judgment of Geo. P. Gray against C. M. Carter and W. P. Doland. Appellant made two principal objections at the trial to the admission of this evidence: 1. That it did not show who the judgment debtors were; 2. That it did not show any judgment for money. On examining the docket, we find

under the head of "judgment debtors" the following entry:

"Carter, C. M., *et al*;" and opposite, under the head "amount of judgment," the figures | 6 | 5 | 5 | 50 | , in a column ruled in the manner usual with money columns in books of account to denote the amounts entered, in dollars and cents, but without any dollar mark to show that such figures are intended to represent money at all.

Appellant insists that the entry is fatally defective, in both respects, and that in consequence thereof the Gray judgment never became a lien on the property in controversy. The statute, however, does not expressly require the entry of the names of all the judgment debtors, in any case, under this head, in the judgment docket. (Civ. Code, secs. 266 and 562.) And we can perceive no good reason for holding invalid an entry which does, as in this instance, fully and correctly set forth the name of the judgment debtor against whose lands the lien is claimed, because it does not also give the name of a co-debtor, against whose property no relief is sought. There is no misdescription of the judgment, and the addition of the name of W. P. Doland, as a co-debtor, in the docket entry, would not have made it more certain that the judgment was a lien on the real property of C. M. Carter, lying within Multnomah county. Construing the statute both in view of its express requirements, and the obvious purpose of the entry in the judgment docket, we think there can be but little doubt that if not otherwise deficient it made the Gray judgment a lien upon the real property in controversy, the title of which was then in C. M. Carter. The objection that it does not appear from the docket entry what the figures, in the column headed, "amount of judgment," stand for, presents a question by no means new in this court. In the case of *French, et al.* v. *Rogers*, disposed of at the last term, we

held, in effect, that any mark commonly understood, and ordinarily employed in business transactions to denote the division of figures, obviously representing money, into dollars and cents, would suffice for that purpose, in entries of this character. Such we deemed the mark ordinarily used in setting down sums of money on paper, to denote the amount represented by the two figures on the right as cents, and that represented by the figures on the left as dollars; and the same effect in our judgment must be allowed to the lines and spaces in the ruled money columns, in regular account books, or official records similarly prepared. General usage and common understanding have given such marks and lines, when so employed, a signification by which not individuals only, but courts as well, are enabled to determine what, and what amount figures so placed were intended to represent, with as much ease and almost as much certainty as though the dollar mark itself, or written words even had been used to express the same meaning. To the doctrine of that case we still adhere, and deem it decisive of this point in the case before us.

Appellant next contends that the sheriff's deed to him of August 18, 1877, conveyed to him the entire legal title in the property in controversy, and that the subsequent sale under the Gray judgment to the respondent, had no effect upon such legal title, but, at most, operated as an assignment of the judgment to the purchaser thereof, and invested him only with the right to redeem from the appellant, by a suit in equity. The decision in *Post* v. *Arnot*, 2 Denio, 344, has been cited as supporting this view. Unfortunately this was only one of two questions presented and considered in that case, and the decision might well stand upon the determination of either in a given manner by a majority of the court, or even by the concurrence of minorities on both.

Eleven senators voted for the reversal and nine against it. Only six of those voting in the majority expressed opinions, and two of these placed their judgment on the other ground. It cannot be said with any kind of certainty that any principle was determined by this decision, or that it has any weight as an authority on either of the questions it involved. (*Kortwright* v. *Cady*, 21 N. Y., 343.) And it is quite sure that it has not been followed in the state where it was rendered or elsewhere. (*Walsh* v. *The Rutgers Fire Ins. Co.*, 13 Abb. Pr., 37; *Peabody* v. *Roberts*, 47 Barb., 100.)

And besides, we regard the question as virtually settled the other way in this state, by the decision of this court in the case of *Besser* v. *Hawthorn*, 3 Or., 512, affirming the decree of the circuit court, also reported in the same volume on page 129. Under this decision, the title in the case at bar did pass to the respondent by the sale and deed under the Gray judgment, and he can maintain this action. We conceive the true doctrine, and that which has been established in this state by the decision referred to, to be that the junior lien holder is not in any way affected by the proceedings to foreclose, to which he is not a party; that his right to sell on execution and convey the title remains unimpaired; and that as to the purchaser at the sale under his judgment, the purchaser at the prior sale under the decree of foreclosure must be considered as an assignee of the mortgage, and successor in interest to the mortgagor, simply, and as in the same position he would have occupied had he taken a simple assignment of the mortgage from the owner, and a conveyance of title from the mortgagor, and made no attempt to foreclose. (*Davenport* v. *Turpin*, 43 Cal., 597; *Vanderkamp* v. *Shelton*, 11 Paige, 28; *Holmes* v. *Bybee*, 34 Ind., 263; *Peabody* v. *Roberts*, 47 Barb., 100.)

The exclusion of the record of the proceeding in bank-

ruptcy, and the assignee's deed to appellant, seems to us open to no objection whatever. The petition to have Carter adjudged a bankrupt was not filed until July 6, 1877, long after the sale under appellant's decree had been made and confirmed, and when Carter had only a mere right to redeem. There seems never to have been any question as to the validity or *bona fides* of such sale to appellant so far as Carter was concerned, or those claiming under him. The assignee never had any title to the premises; never pretended that he had or could get any, and his quit claim deed to the appellant, which the latter seems to have solicited, to exclude any question as to the soundness of his title, passed nothing. The tax deed was offered in evidence by the appellant at the trial in connection with the original assessment roll and delinquent tax roll on which it was based. Neither of these rolls showed any assessment against Carter or his property, or any delinquent tax to pay which block 47 might lawfully have been sold. While if the tax deed had been offered by itself, it might or might not have been admissible, it clearly was not when presented in connection with the assessment and delinquent tax rolls, which failed to show facts essential to its validity. The court below properly rejected all the papers thus offered together. And as the respondent's case was established by documentary evidence alone, whose effect as well as admissibility were proper subjects for the determination of the court, and fully sustained the propositions assumed in the instruction to the jury, to return their verdict for the respondent, and no evidence was admitted on behalf of the appellant, such instruction was not only correct, but in every respect proper. The judgment of the circuit court is affirmed with costs to the respondent.

Judgment affirmed.