Argued June 8, decided July 5. rehearing denied September 26, 1911.

## TUALATIN ACADEMY *v.* KEENE.

[117 Pac. 424.]

WILLS—CERTAINTY—IDENTITY OF BENEFICIARY.

1. A testamentary gift to a corporation is not defeated by any mistake in naming the corporation, if it can be identified as by location of its building.

WILLS—BENEFICIARIES—IDENTITY.

2. A devise to the "Congregational Seminary at Forest Grove in Washington County, State of Oregon," is good as a devise to the "President and Trustees of Tualatin Academy and Pacific University"; the last-named corporation conducting a Congregational seminary at such place, and being the only seminary there.

EVIDENCE—SECONDARY EVIDENCE—EXISTENCE OF MORTGAGE.

3. All the parties to a mortgage, except one, being dead, the best evidence of its execution was a verified complaint, a decree, etc., in a suit wherein it was foreclosed.

SUBROGATION—PURCHASE AT FORECLOSURE SALE.

4. The remainderman under a mortgagor's will, not having been made a party to foreclosure, which proceeded against the widow on the theory she owned the fee, though she had a life estate only, the remainderman's interest was not extinguished, but the purchasers and their grantees became subrogated to the mortgagee's rights against the remainderman, including the right to tender of the amount remaining unpaid on the mortgage, as a condition upon the remainderman's right to redeem.

Mortgages—Costs and Fees—Liability.
5. One redeeming land sold under mortgage foreclosure is not charge-able with costs, attorney's fees, etc., if he was not a party to the suit.

Mortgages—Redemption—Credits.
6. On suit by a remainderman to redeem from mortgage foreclosure to which he was not a party and which proceeded against a life tenant as though she were owner of the fee, the mortgage debt should be credited the estimated value of the property obtained by the purchasers at the foreclosure sale, against whom redemption is sought.

Mortgages—Redemption—Credits.
7. On suit by a remainderman to redeem from mortgage foreclosure, to which he was not a party, and which proceeded against a life tenant as though she were owner of the fee, it is immaterial what the purchaser at foreclosure received for deeds to part of the lands which he sold.

From Linn:  William Galloway, Judge.

Statement by Mr. Justice Moore.

This suit by the president and trustees of Tualatin Academy and Pacific University against Emma A. Keene, R. G. Keene, her husband, Charta O. Zimmerman and Florence S. Zimmerman, his wife, Ida B. Wickham, Lafayette Townsend, Samuel M. Garland, as administrator of the estate of M. L. Zigler, deceased, F. P. Bodwell and Ora M. Bodwell, his wife, Mamie L. Burkhart, guardian, Alma L. Allen, and E. E. Ferguson, Belle C. Ferguson and J. A. Ruyter, partners doing business as Ferguson & Ruyter, and involves a controversy relating to the foreclosure of a real estate mortgage. The facts are that on November 1, 1887, Robert McCullough and C. M. Talbott gave to Jacob Kees their promissory note for $900, maturing in one year with interest at the rate of ten per cent per annum until paid. The note contained a stipulation that, if suit should be commenced to collect any part of the sum named, the makers would pay a reasonable sum as attorney's fees. In order to secure the payment of the debt, McCullough and Talbott and their wives executed to Kees a mortgage of all the north half of the donation land claim of Wm. Klum and wife in Linn County, except about 50 acres thereof which had been conveyed to Ezra Fisher. The mortgage was duly recorded, and at the time

it was given McCullough and Mrs. Talbott, as tenants in common, were the owners in fee of the premises. McCullough died testate December 13, 1892, and his last will, having been admitted to probate, contained a clause as follows:

"I give, devise and bequeath the use of all the residue of my property both real and personal to my beloved wife Lavina H. McCullough during her natural lifetime and to be disposed of as my executor in his judgment, the probate court concurring, think best, and at the death of my wife Lavina H. McCullough all that remains of my property shall go to the Congregational Seminary at Forest Grove in Washington County, State of Oregon."

The plaintiff herein is a corporation as the "President and Trustees of Tualatin Academy and Pacific University," and at the time the will was made was engaged in conducting a Congregational seminary at Forest Grove, Washington County, Oregon, and is and was known by the latter name and also by its corporate title. Without making the corporation a party, Kees commenced a suit to foreclose the lien of his mortgage, alleging as a second cause of suit that on August 25, 1891, Talbott and McCullough gave him another promissory note for $700, maturing in a year with interest at the rate of ten per cent per annum until paid; that the note stipulated for the payment of a reasonable sum as attorney's fees in case suit were instituted to collect any part thereof; that to secure the payment of that note the makers thereof and their wives also executed to him a second mortgage of the same premises, but such sealed instrument after due and diligent search could not be found, was lost, and never had been recorded. A decree was rendered in that suit establishing the second mortgage, foreclosing both, and awarding to Kees on the note executed November 1, 1887, the sum of $746.37 and $80 as attorney's fees, and on the note given August 25, 1891, $828.50 and $80 as attorney's fees, besides $84.50 as costs and disbursements, with interest

on the amount of each note from June 27, 1894, when the decree was given, until paid, at the rate of ten per cent per year, and interest at the rate of eight per cent on the sums awarded as attorney's fees. Pursuant to the decree, the premises were sold as an entirety August 4, 1894, to Kees for $900, and after deducting therefrom $31.40, as accruing costs, the remainder was credited on account of the judgment. The sale having been duly confirmed and no redemption made or offered, the sheriff executed to the purchaser a deed of the premises.

Prior to the making of the will, McCullough and Talbott and their wives had sold and conveyed a part of the mortgaged premises, and had also executed a bond for a deed to another part, designated on a plat submitted with the briefs as tracts numbered 1 and 2, respectively. After securing the sheriff's deed, Kees and his wife executed to the respective purchasers of such tracts deeds confirming their titles, which conveyances satisfied the foreclosure decree as to such lands, receiving from the claimants of tract numbered 2, $350, which sum remained due McCullough and Talbott on account of the purchase price. These parcels of land were disposed of before the will was made and are not involved herein. Kees and his wife on July 14, 1896, in consideration of $1,200, executed to the defendant Emma A. Keene a quitclaim deed to tracts numbered 3 and 4, containing 91.15 and 103.02 acres, respectively, and on October 5, 1896, he and his wife, in consideration of $100, also executed to Mary Zigler and Ellen Zigler a quitclaim deed for tract numbered 5, containing 16.68 acres. This latter tract is now owned by the defendant Charta O. Zimmerman and with other lands was mortgaged by him for the sum of $650 to M. L. Zigler, who having died, his estate is represented herein by the defendant, Samuel M. Garland as administrator.

Emma A. Keene and her husband on October 31, 1899, in consideration of $1,200, executed a deed to tract num-

bered 3 to Martha M. Wickham, who mortgaged the premises to the defendant Lafayette Townsend to secure the sum of $1,200, and Mrs. Wickham subsequently conveyed the land to her daughter, the defendant Ida B. Wickham, now Mrs. Jones. Mrs. Keene and her husband, in order to secure the payment of $1,000, executed a mortgage to the defendant Mamie L. Burkhart, guardian of the person and estate of the defendant, Alma L. Allen, a minor.

The defendants E. E. Ferguson, Belle C. Ferguson and J. A. Ruyter, partners as Ferguson & Ruyter, obtained a judgment against Martha M. Wickham, now deceased, for the sum of $340, and the costs and disbursements taxed at $19.95.

Mrs. Lavina H. McCullough died October 28, 1900, when she was about 72 years old, and within six years thereafter this suit was instituted, the complaint stating the facts in greater detail than hereinbefore given, and, adverting to the second mortgage described in Kees' foreclosure suit, avers:

"That plaintiff is advised and believes, and therefore alleges the facts to be, that said Robert McCullough never made or executed any such mortgage as the one last above referred to."

The complaint herein further alleges that no part of the real property described in the mortgage executed to Kees was ever disposed of in any administration upon McCullough's estate, and that such testator died seised of an undivided one-half thereof; that the foreclosure suit and the sheriff's deed made in pursuance thereof transferred to Kees only the undivided one-half interest in the premises formerly owned by Carrie A. Talbott and also the life estate of Lavina H. McCullough; and that plaintiff is ready, able, and willing to pay such sum, if any, as may be equitably due and chargeable against its undivided one-half of the land, but is unable to ascertain such sums, if any, or to what defendants any part thereof

should be disbursed, to determine which a discovery and an accounting are necessary respecting the amount of taxes paid, and the value of the rents, issues, and profits of the real property received by the defendants since the death of Mrs. McCullough.

The defendants Emma A. Keene, R. G. Keene, her husband, Mamie L. Burkhart, guardian, and Alma L. Allen, the ward, jointly answered, setting forth the facts applicable to tract numbered 4 as hereinbefore stated, and averred that, after the purchase of that part of the land by Mrs. Keene, she immediately took and has constantly held adverse possession thereof under a claim of right for more than 10 years prior to the commencement of this suit, believing herself to be the owner thereof in fee, and that with plaintiff's full knowledge of her assertion she had paid taxes aggregating $256.28 which had been imposed on the premises, and made improvements thereon of the value of $1,415, and that while she owned tract numbered 3, now owned by Mrs. Jones, she had made improvements thereto valued at $852.

The defendants Charta O. Zimmerman, Florence S. Zimmerman, his wife, and Samuel M. Garland, as administrator of the estate of M. L. Zigler, deceased, jointly answered, setting forth the facts applicable to tract numbered 5, as detailed in substance hereinbefore, and of similar import with the preceding answer.

The defendants Ida B. Wickham and Lafayette Townsend also jointly answered setting out the facts respecting tract numbered 3 as hereinbefore stated and conformable with the other answers so far as material. The defendants E. E. Ferguson, Belle C. Ferguson, and J. A. Ruyter, partners as Ferguson & Ruyter, made default. Replies having put in issue the allegations of new matter in the separate answers, the cause was tried, and from the evidence received the court made findings of fact conformable to the averments of the

complaint, and, having rendered a decree in accordance therewith, the defendants appeal.        MODIFIED.

For appellants there was a brief over the names of *Messrs. Hewitt & Sox, Messrs. Weatherford & Wyatt, Mr. George G. Bingham* and *Mr. Samuel M. Garland,* with an oral argument by *Mr. Hewitt.*

For respondent there was a brief and an oral argument by *Mr. Milton W. Smith.*

MR. JUSTICE MOORE delivered the opinion of the court.

MR. JUSTICE BURNETT dissenting.

Though Robert McCullough devised the land specified herein, subject to the life estate of his wife, to the "Congregational Seminary at Forest Grove in Washington County, State of Oregon," and plaintiff's corporate name is the "President and Trustees of Tualatin Academy and Pacific University," we are satisfied that it was his intention to designate the plaintiff as the object of his bounty. The testimony shows that plaintiff's seminary is the only academy at the place specified, and that its university is and was at the time the will was executed conducted by the religious denomination mentioned.

1. If a corporation can be identified by the location of its building, any mistake or omission of its name will not defeat a testamentary donation of property to it. Page, Wills, § 539; *Jacobs, Executor,* v. *Bradley,* 36 Conn. 365; *Missionary Society* v. *Nead,* 131 Ill. 33 (23 N. E. 603); *Reilly* v. *Union Prot. Infirmary,* 87 Md. 664 (40 Atl. 894); *Minot* v. *Boston Asylum,* 7 Metc. (Mass.) 416; *Trustees* v. *Peaslee,* 15 N. H. 317.

2. As a testator's intention is the pole star in the construction of the terms of his last will, when considered in its entirety, we concur in the finding made by the trial court that it was the purpose of Robert McCullough to bestow the residue of his property in the manner indicated, and that the location of the seminary and the

specification of the denomination conducting it, as given in his last testament, sufficiently identify the plaintiff.

We do not agree, however, with the court's findings respecting the effects of the decree of foreclosure in the suit instituted by Kees for that purpose, nor with its conclusions as to the money remaining due after the sale of the mortgaged premises, the payment whereof is a condition precedent to the right of redemption for which purpose, in our opinion, this suit was instituted.

3. It will be remembered that, anticipating a defense, the averment is made in the complaint, upon information and belief, that Robert McCullough never executed a mortgage to secure the promissory note for $700 given August 25, 1891. "It," says a noted author, is reasonable that the one who asserts a fact necessary to the claim or defense should prove such fact; and in the great majority of cases it will be found that the fact to be proved is a proposition affirmative in form. But it is well settled that whoever asserts a claim or defense which depends upon a negative must, as in other cases, establish the truth of the allegation by a preponderance of evidence." Jones, Ev. (2 ed.) § 180. No testimony was given by plaintiff tending to prove that McCullough did not execute the mortgage to secure the payment of the promissory note for $700. Defendants, however, offered in evidence a copy of the complaint in the foreclosure suit, containing an averment of the making and delivery of that mortgage and the loss thereof without being recorded, which pleading purports to have been subscribed and sworn to by Kees before a notary public. This averment and the decree based thereon, a copy of which was offered in evidence, though not binding in the original suit on the plaintiff herein, afforded some proof respecting the issue.

The testimony of J. K. Weatherford is to the effect that a copy of the $700 note offered in evidence is in his handwriting, purporting to have been signed by McCul-

lough and Talbott, and he states upon oath that in order to make the transcript which was presented for allowance to the representative of McCullough's estate, April 24, 1893, he must have had the original note in his possession, though he did not remember the fact.

All the parties to the mortgage are dead except Mrs. Talbott, and such being the case, when the defendants produced authenticated copies of the complaint, decree, etc., in the foreclosure suit and a copy of the note referred to, they offered the best evidence obtainable which, in view of the averment of a negative in the complaint, respecting the security of the $700 note, is sufficient to establish the validity of that mortgage.

4. By failing to make plaintiff a party to the foreclosure, the fee to the part of the land of which McCullough died seised was evidently considered as vested in his widow, for the complaint therein states in effect that since executing the mortgages he had died, leaving the defendant Lavina M. McCullough, surviving as his sole heir at law. Under the decree of foreclosure the purchasers of tracts numbered 3, 4, and 5 obtained a title in fee to only an undivided half thereof, and also Mrs. McCullough's life estate which terminated October 28, 1900, when she died. The plaintiff's title to the other undivided half of the lands not having been extinguished by the foreclosure, the deeds executed pursuant to the decree, purporting to convey such estate, operated as an equitable assignment *pro tanto* of the mortgage, by which the purchasers of the premises and their grantees become subrogated to all the rights of Kees and are mortgagees in possession of plaintiff's interest. *Cook* v. *Cooper,* 18 Or. 142 (22 Pac. 945: 7 L. R. A. 273: 17 Am. St. Rep. 709) ; *Miner* v. *Beekman,* 50 N. Y. 337; *Bryan* v. *Brasius,* 162 U. S. 415 (16 Sup. Ct. 803: 40 L. Ed. 1022).

"The party offering to redeem," says Mr. Justice BRADLEY in *Collins* v. *Riggs,* 14 Wall. 491 (20 L. Ed.

723), "proceeds upon the hypothesis that, as to him, the mortgage has not been foreclosed and is still in existence; therefore he can only lift it by paying it." To the same effect, see, also, *Flanders* v. *Aumack*, 32 Or. 19 (51 Pac. 447: 67 Am. St. Rep. 504); *Williams* v. *Wilson*, 42 Or. 299 (70 Pac. 1031: 95 Am. St. Rep. 745); *Brand* v. *Baker*, 42 Or. 426 (71 Pac. 320); *Kaston* v. *Storey*, 47 Or. 150 (80 Pac. 217: 114 Am. St. Rep. 912); *Marquam* v. *Ross*, 47 Or. 374 (78 Pac. 698: 83 Pac. 852: 86 Pac. 1); *Jackson* v. *Lassas*, 49 Or. 470 (90 Pac. 904). The defendants who are owners of an undivided half of the premises are purchasers under the decree of foreclosure, and, though they are tenants in common with plaintiff, their titles were secured by a suit *in invitum*, and, such being the case, they are not in privity with either of the mortgagors, nor are they liable for the payment of any part of the mortgage debt, while plaintiff, as the successor of McCullough, though not liable beyond the value of its interest in the land, must, in order to redeem, pay the remainder due on the mortgage. It would have been to plaintiff's advantage if the mortgaged premises had been sold by the sheriff at the highest price obtainable in order to reduce as much as possible the sum to be paid in a suit to redeem. The testimony shows that plaintiff was notified of the foreclosure suit, but did not intervene, probably because at that time the value of the land was no greater than the sum of money for which it was sold. When the worth of such lands has very much appreciated, plaintiff should not now be subrogated to the rights of the defendants by redeeming the entire premises, but limited to a restoration of the estate morgaged by its devisor by complying with the terms hereinafter stated.

The payments that have been made since the foreclosure decree was given must be considered, an item of which is the value of the life estate when it was sold. At that time Mrs. McCullough was 72 years old and had

a right by her husband's last will to the rents, issues, and profits of the premises. The fee, in which she had a life estate, purported to have been sold for $450 or one-half the sum bid at the sheriff's sale, and she would have been entitled to interest on that sum at 6 per cent, the legal rate, or an annual revenue of $27 during her life, in lieu of the rents, etc. This yearly income multiplied by 5.42378, the number representing the value of an annuity of a single life of a person of Mrs. McCullough's age (Giauque & M. Pres. Val. Tables, p. 15), gives $146.44 as the worth of her vested interest August 4, 1894, when the premises were sold under the decree.

It will be remembered that on June 27, 1894, Kees recovered the respective amounts of the notes, $746.37 and $828.50, besides attorney's fees and costs and disbursements. On August 4, 1894, the premises were sold under the decree for $900, from which sum was deducted accruing costs.

5. The plaintiff was not a party to that suit, and for that reason is not responsible for or to be charged with any of the costs incurred therein, or attorney's fees, or the expenses of the sale. Wiltsie, Mort. Foreclos. § 261.

6. There should be credited on the mortgage debt the estimated value of the property and rights obtained by the sheriff's deed, viz., Mrs. Talbott's fee in the premises, $450, and the then present worth of Mrs. McCullough's life estate, $146.44, or $596.44. The decree was rendered June 27, 1894, and the sale occurred August 4th of that year. The interest should be computed on the mortgage notes from the time they were severally given, less the partial payments as they were made until the time of the sale under the decree; but as that calculation is difficult from the evidence before us, and as the compound interest for the time stated is so small, the sum awarded, $1,574.87, will be considered as at interest at 10 per cent per annum from the time of the decree to that of

the sale, thereby earning $16.18 and amounting to $1,591.05. Deducting the payment of $596.44, there remained $994.61, which at interest from August 4, 1894, to May 16, 1895, at the same rate, gives for the use of the money for that time $77.91, amounting to $1,072.52. Kees on May 16, 1895, received from the purchasers of tract numbered 2 the sum of $350, which was due on the bond for a deed given by McCullough and Talbott. This piece of land was included in the mortgage which was executed prior to the giving of the bond for a deed, and in the suit of foreclosure such purchasers, having been made parties, appeared and filed answers. The foreclosure decree recites that these answers were withdrawn by stipulation. In a suit for a specific performance, the purchasers of tract numbered 2, upon the payment of $350, the remainder due on the bond for a deed, could have secured a decree conveying the title, notwithstanding McCullough's death and the probate of his last will devising the residue of his property to plaintiff, but the title to the premises which could thus have been obtained would have been subject to Kees' mortgage which was prior to the execution of the contract to convey. So too in the foreclosure suit these purchasers by answering might have set forth their interest in the tract of land and could have obtained a decree of similar import; but it would have been subordinate to Kees' paramount right which would have been protected in his decree.

It is needless to speculate whether or not the defendants in the foreclosure suit, who were the obligees, in the bond for a deed made an agreement with Kees that in consideration of withdrawing their answer he would secure a title by a decree and sheriff's deed to the entire mortgaged premises and execute to them a deed to their tract of which they were the equitable owners, upon the payment of $350 remaining due on their contract of purchase, for as this money equitably belonged to Mrs. Tal-

bott and to the McCullough estate and was paid to Kees, evidently without objection in order to perfect the title, it should be credited on the mortgage indebtedness.

7. No allowance, however, should be made for the sum of $1,200 received by Kees for a conveyance of tracts numbered 3 and 4, nor for $100 which he obtained for executing a deed to tract numbered 5, for prior to granting such interests he had secured the sheriff's deed for all the mortgaged premises, and, as no part of such sums was payable either to Mrs. Talbot or the McCullough estate, whether he was paid an adequate consideration for his interest in these tracts or made donations thereof is immaterial.

Deducting from $1,072.52, the amount of the mortgage debt May 16, 1895, $350, the balance due on the bond for a deed, there remained owing at that time $722.52. Computing interest thereon at the rate of 10 per cent per annum from May 16, 1895, to July 5, 1911, when this opinion was handed down, it is found to be $1,165.86, which added to principal amounts to $1,888.38 as the sum due on the mortgage indebtedness and necessary to be paid by plaintiff as a condition precedent to the right of equitable redemption.

By awarding to plaintiff an undivided half of tracts numbered 3, 4, and 5, the value of the present mortgage security thereon is necessarily impaired, and to compensate the mortgagees in part for their loss of indemnity the sum of $1,888.38 now found to be due Ida B. Jones, Emma A. Keene, and Charta O. Zimmerman or hereafter ascertained to be due them on account of permanent improvements, etc., must be paid by plaintiff to the defendants Lafayette Townsend, Mamie L. Burkhart, and Samuel M. Garland according to their respective interests represented by the security held by each at the time of such payment, as compared with the relative values of such tracts August 4, 1894, when they were sold by the

sheriff. From the evidence before us it is impossible accurately to determine the value at that time. The worth of the entire lands specified in the sheriff's deed must be regarded as $900, and this sum must be apportioned to the several tracts in the ratio of their respective values August 4, 1894, which fact must be determined from testimony to be taken upon issues of interpleader between the several groups of defendants.

If within 60 days plaintiff pays to the clerk of the lower court $1,888.38 irrevocably to be distributed to the defendants who may be found entitled thereto, a redemption will be initiated, which right shall become perfected when plaintiff pays to such mortgagees or owners, as the case may be, the worth of one-half of all permanent improvements made upon the respective tracts since they were sold under the decree of foreclosure, and also one-half of all taxes imposed thereon and paid by the defendants since the death of Mrs. Lavina H. McCullough, less one-half the value of the rents, issues, and profits received since that time, and also less one-half the worth of any wood or timber cut and removed from the premises.

Unless the sum of $1,888.38 is paid within the time specified, the mortgages which were undertaken to be foreclosed will be strictly foreclosed (Wiltsie, Mort. Foreclos. § 160), and plaintiff and all persons claiming by, through, or under it will be barred of all right, title, claim, interest, or estate in or to the lands and every part thereof.

The decree of the lower court will therefore be modified as herein indicated, and the cause remanded, and, if such payment is made within the time limited, a supplemental decree will be given conformable to findings to be made on such settlement; the defendants to recover their costs in this court.                              MODIFIED.

MR. JUSTICE BURNETT delivered the following dissenting opinion.

On November 7, 1887, Robert McCullough and Carrie A. Talbott were the owners of certain lands in Linn County, and at that time mortgaged the same to Jacob Kees to secure the payment of $900. On August 25, 1891, they gave Kees a further mortgage on the same premises for $700. In July, 1892, they sold about 20 acres of the land to Mary Cady. Subsequent to the mortgages, McCullough and Talbott made a contract with M. L. Zigler for the sale to Zigler of still another tract of said land. McCullough, on the 8th of December, 1892, executed a will in which he provided for the payment of his debts and funeral expenses and the erection of a monument over his grave and then gave, devised and bequeathed the use of all the residue of his property, both real and personal, to his wife, Lavina H. McCullough, during her natural lifetime, and directed that at the death of his wife all that remained of his property should go to the "Congregational Seminary at Forest Grove in Washington County, State of Oregon." McCullough died December 13, 1892, seised of an undivided half of the lands mentioned, except what had been sold as stated, and subject to the mortgages given to Kees. The will was admitted to probate and recorded in Linn County, Oregon, December 17, 1892. Kees afterwards began suit in the circuit court of Linn County to foreclose the two mortgages, making parties defendant of all persons having an interest in the land, including Zigler and excepting the plaintiff herein, either in its name as the President and Trustees of Tualatin Academy and Pacific University, or as designated in the will, "Congregational Seminary at Forest Grove." That suit went to decree of foreclosure; Zigler withdrawing his answer before decree. At the sale of the premises, the mortgagee, Jacob Kees, bought the property and afterwards received

a sheriff's deed which, in pursuance of the decree and sale, purported to convey to him the entire fee-simple estate in the whole tract. He subsequently sold to various persons, in separate parcels, all the land in question, having entered into possession of the whole under the sheriff's deed. Among others, he quitclaimed to Mary Zigler and Ellen Zigler for $350 the tract bargained by McCullough and Talbott to M. L. Zigler and another parcel for $100.

On the 9th of March, 1907, the · plaintiff commenced this suit, alleging in its complaint, in detail, all the transactions above alluded to, except that it states that it is advised and believes, and therefore alleges the fact to be, that Robert McCullough never made nor executed the second mortgage mentioned above. However, the plaintiff offered no testimony in support of this attack upon that mortgage. It made defendants of all the parties claiming interest in the land subsequent to and as grantees of Kees, whether by deed, mortgage, or judgment. It states further:

"That each and all of the defendants herein claim that said foreclosure proceedings hereinbefore referred to and the sheriff's deed made thereon to said Jacob Kees, in effect, conveyed the entire title in the said premises to the said Jacob Kees, and that the subsequent deeds and mortgages hereinbefore referred to have the effect of transferring the entire title to the premises herein described; whereas, in truth and in fact said foreclosure proceedings and said sheriff's deed conveyed unto said Jacob Kees only the undivided half interest in said premises formerly owned by Carrie A. Talbott and the life estate of the said Lavina H. McCullough."

The plaintiff also avers:

"That it is ready, willing, and able to pay such sum, if any, as may be equitably due and chargeable against the undivided half interest of said premises described in this complaint owned by the plaintiff; but plaintiff has been unable to learn or ascertain what amount, if any, is chargeable against plaintiff's said interest in said premises, or to which of the defendants such payment

should be made; that a discovery and accounting is necessary in order to determine what amount, if any, is chargeable against plaintiff's said interest in said premises on account of any taxes paid thereon by said defendants or either of them since the death of the said Lavina H. McCullough, and to determine what portion of said premises defendants, or any thereof, have been in possession of and what they have received from the rents, issues, use, occupation, or profits of such portions subsequent to the death of the said Lavina H. McCullough."

And prays that its title to the undivided half interest formerly owned by the said Robert McCullough be declared established; that an accounting may be had between the plaintiffs and the defendants herein to determine what amount, if any, plaintiff should pay to defendants, and to which of the defendants such amount, or any portion thereof, is payable; that upon payment of such amount, if any be found due to the defendants, each and all defendants may be adjudged to have no right, title, interest, lien, or claim, or estate whatsoever against plaintiff's undivided one-half interest in said premises; that they be enjoined and restrained from claiming, or attempting to claim, any estate, right, title, lien, or interest in the premises; that the morgage first above referred to be canceled; and that the defendants who failed to appear shall be adjudged to have no estate in the lands. The plaintiff claims that it is the residuary devisee under the will of McCullough, and that he intended the designation of "Congregational Seminary of Forest Grove" to apply to the plaintiff herein.

The widow of the testator had been dead nearly six years when this suit was commenced. The defendants answered giving the history of their title, deraigning the same from Jacob Kees under his sheriff's deed, and alleged that they had been in possession, claiming to own the property under color of title adversely to all persons, for more than 10 years. The cause being at issue, the circuit court rendered a decree in favor of the plaintiff

in substance that it is the owner in fee and entitled to the possession, use, and enjoyment of an undivided half interest in the premises free of all incumbrance and barred the defendants from claiming any interest in the same. From this decree, the defendants have appealed.

The bill has some of the aspects of a complaint to determine an adverse interest in lands, under Section 516, Lord's Oregon Laws, as indicated by the extract quoted above; but it cannot be entertained as such because it fails to allege that the land is not in actual possession of another. It is contended in the argument on the part of the plaintiff that it is a suit against the defendants as co-tenants with the plaintiff for an accounting for the rents and profits; but it nowhere alleges that any of the defendants ever received any of the rents or profits, or were even in possession of the lands in dispute. So far as that is concerned, it is, from the complaint, just as apparent that the plaintiff should make such an accounting as that the defendant should. The bill is manifestly, in substance, one exhibited for the purpose of redeeming the land from the effect of the foreclosure sale in question. If it were not so, why should it go to such extreme particularity in relating the history of the title and setting out the claims of the defendants, and then pray for a decree enjoining the defendants from claiming any right or title in the premises?

For the purposes of this opinion, it is not necessary to determine whether the "Congregational Seminary at Forest Grove" is a sufficient designation of the plaintiff. The first question which presents itself is: What was the effect of the foreclosure of Kees' mortgage without making the plaintiff here a party to that suit?

We are told in *De Lashmutt* v. *Sellwood,* 10 Or. 326, that the true doctrine in this State is that a junior lienholder is not in any way affected by the proceedings to foreclose to which he is not a party; that his right to sell

Sig. 17

on execution and convey the title remains unimpaired; and that, as to the purchaser at the sale under his judgment, the purchaser at the prior sale under the decree of foreclosure must be considered as an assignee of the mortgage and successor in interest to the mortgagor simply and as in the same position he would have occupied had he taken a simple assignment of the mortgage from the owner, and a conveyance of title from the mortgagor, and made no attempt to foreclose. In that case the purchaser at a sale under an execution issued upon a junior judgment, the owner of which had not been made a party to the foreclosure, was sustained in his possession of the land as against the purchaser at the foreclosure sale, although the mortgage foreclosed was prior in effect to the judgment.

This learning is further exemplified in *Sellwood* v. *Gray,* 11 Or. 539 (5 Pac. 196). This case grew out of the same proceeding in question in *De Lashmutt* v. *Sellwood,* 10 Or. 326, and it was held in the latter case that, when the plaintiff in the foreclosure suit obtained a decree for the sale of property without making the defendant Gray a party, the proceeding as to him was a nullity; but that the sale effected some important results, in this, that as to the defendant Gray it stood as if no such sale had been made. He had a right to redeem by paying the amount of the incumbrance. The plaintiff as purchaser at the foreclosure and sale took all the rights of his senior mortgagee, and so much of the mortgagor's equity of redemption as was not bound by the subsequent lien of the defendant Gray.

Still further, in *Osborn* v. *Logus,* 28 Or. 310 (37 Pac. 456: 38 Pac. 190: 42 Pac. 997), this court says that the owner of the equity of redemption is an indispensable party, and without him the suit cannot proceed. Subsequent lienors are considered necessary parties, but their absence from the record does not perforce of that fact render the proceedings a nullity.

In *Wilson* v. *Tarter,* 22 Or. 504 (30 Pac. 499), a purchaser at a foreclosure sale, in which the owner of an integral part of the land included in the mortgage was not made a party to the foreclosure, was given the option of compelling the owner of the parcel to redeem by paying the full debt or of conveying to the subsequent owner the parcel in question.

In *Sellwood* v. *Gray,* 10 Or. 326, Judge LORD says, referring to the mortgagor: "His equity of redemption is the right to redeem from the mortgage—to pay off the mortgage debt—until this right is barred by decree of foreclosure; but, until this right is barred, his estate in law or equity is just the same after as it was before default. It is a right, though, of which the law takes no cognizance, and is enforceable only in equity, and has nothing to do with our statute of redemptions. This is a valuable right, and exists not only in the mortgagor himself, but in every other person who has an interest in, or legal or equitable lien upon, the mortgaged premises, and includes judgment creditors, all of whom may insist upon a redemption of the mortgage."

Conceding, as we must, for the purposes of this opinion, that the plaintiff was the residuary devisee, under the McCullough will, within the meaning of the excerpt just quoted, it had an interest in the mortgaged premises. Indeed, it stood in the shoes of one of the mortgagors, to wit, its testator. As such, it had a right to sue for the redemption of the premises; that right not having been barred by the foreclosure suit. Considering it even as a tenant in common it still had a right to sue for redemption under the authority of *Merritty* v. *Hosmer,* 11 Gray (Mass.) 276 (71 Am. Dec. 713).

An analysis of the cases quoted will show that the right of the purchaser at the sale to compel a redemption, on the one hand, and of a person interested in the premises to sue for redemption, on the other, do not depend on the

decree of the foreclosure being wholly void as to all claimants. In all the cases mentioned, the decree was valid as to some of the defendants in the suit, but, of course, ineffectual as to parties in interest who were not made defendants.

The right of a purchaser at such a sale to compel a redemption by strict foreclosure is a right which is the complement of the right on the part of one claiming a subsequent interest in the land to bring a suit to redeem. The situation is this: The tenant in common, not being made a party to the suit to foreclose, finds some one in possession of the whole of the land with whom he has no privity, who is not a tenant in common under the original holding, and his suit to redeem is an effort to rid the land of the one who has thus intruded. The result of his effort, if successful, is to terminate the effect of the sale and restore the estate to its former owners, for his redemption inures to their benefit. *Dray* v. *Dray,* 21 Or. 59 (27 Pac. 223). What must he do to effect that purpose? He must do equity by redeeming the land, and to do so, in the language of *Williams* v. *Wilson,* 42 Or. 307 (70 Pac. 1033: 95 Am. St. Rep. 745), "he must pay the entire mortgage debt and interest under the equitable rule, and not under the statute, as from a sale under the decree."

All the decisions of this court above noted, so far as the sum to be paid is concerned, contemplate nothing less than the full amount of the mortgage debt. It must be so, for the object of redemption is not to establish co-tenancy with the purchaser, but rather to terminate the effect of the sale and exclude him from participation in the title. He must therefore have his full debt with interest without deducting the amount bid at the sale or any part thereof. Neither should the amount required for redemption, if allowed in this case, be diminished by the $350 forming the consideration paid to Kees to induce

him to quitclaim the tract to Mary and Ellen Zigler. If those two grantees were claiming under the bond for deed from McCullough and Talbott to M. L. Zigler, their interest was subsequent and subordinate to both the Kees mortgages, the latest of which bore date August 25, 1891, while the Zigler bond was executed August 1, 1892. Moreover, although Zigler was made a party to the Kees foreclosure suit as a junior incumbrancer under his bond, he withdrew his answer, and the decree barred and foreclosed him from any further interest in the premises. By his purchase at the foreclosure sale, Kees took the land free from any claim on the part of Zigler. In paraphrase upon the language of *Williams* v. *Wilson,* 42 Or. 308 (70 Pac. 1031: 95 Am. St. Rep. 745), there must have been some purpose in making Zigler a party to the foreclosure suit, and what purpose can be subserved thereby if the decree denied or curtailed none of his rights under his junior bond for a deed? The title he contracted for having been extinguished by the foreclosure, not only because of the juniority of his bond for a deed, but also because he did not set it up as his defense in that suit, he might have had recourse upon his obligors to recover what he had paid them, but he had no claim upon the purchaser at the sale, for the latter took by a title paramount to Zigler's bond. Kees had the right to sell whatever he had acquired by the sale to Zigler or Keene or any one else; but the deal would not inure to the benefit of the plaintiff, a stranger to the transaction.

To charge the $350 against the present defendants, if a redemption is permitted here, would be in effect to declare that, notwithstanding the Zigler bond was subsequent to the Kees mortgage and was foreclosed and its effect terminated by the decree, yet it survives the grave of foreclosure and is resurrected into a position paramount to that of the purchaser at the sale. Of course, if the plaintiff in this suit had alleged that Kees or his

grantees had received anything from the land in excess
of maintenance and taxes, it might by that much reduce
the amount to be paid for redemption, within the prin-
ciple laid down in *Cartwright* v. *Savage,* 5 Or. 397; but
nothing of that kind appears in the complaint.

Manifestly, in this case, the plaintiff is not trying to
redeem its own undivided half separately, for, as we
have seen, its title is not affected by the foreclosure suit
to which it was not a party; but, in order to do equity,
it must redeem the whole property by paying the whole
mortgage debt. The property was pledged as a whole,
the plaintiff's testator was liable for the whole debt, and
the redemption should be equally broad. The important
question, however, is whether plaintiff should be allowed
to redeem at all.

The defendants here urge the plaintiff is seeking to
enforce a stale claim, and that, as such, its former right
to redeem should be barred. The plaintiff contends that
it is merely asking for an accounting between it and the
defendants, whom it styles "its tenants in common," for
the rents and profits of the lands accruing since the death
of Mrs. McCullough and the extinguishment, by that
event, of her life estate; but, as we have seen, the bill
cannot be entertained for such a purpose. The plaintiff's
interest in the real property in question arose at least
when the will of McCullough was probated. At that time
the plaintiff had such an estate in the land as residuary
devisee that it might have paid to Kees the amount due
upon the mortgages even before suit to foreclose and
thus extinguish them. Nothing, so far as appears by
this record, ever arose to prevent such action on the part
of the plaintiff. The life estate of Mrs. McCullough was
no obstacle to prevent plaintiff's redemption, for, being
a tenant in common with her, it could have charged her
with her proportional part of the redemption fund. It
was more than 14 years after it thus became entitled to

redeem from the effect of the Kees mortgages until the plaintiff instituted this suit.

In the settlement of the McCullough estate, the plaintiff was served with citation on the 6th day of December, 1894, to show cause in the county court of Linn County why these very premises should not be sold for the satisfaction of claims against the McCullough estate. Prior to the Kees foreclosure it was notified, by correspondence with J. M. Somers, an attorney, of the situation and was importuned to make some provision for the payment of the mortgage, but declined to do so. So far as the records appear, it made no answer to the citation to show cause why the land should not be sold at administrator's sale. It was certainly by these facts put upon its inquiry as to its interest in the lands as early as December 6, 1894, the date the citation was served upon it.

The general statute of limitations for the recovery of real property is 10 years. Section 3, L. O. L. While courts of equity are not bound strictly, like courts of law, by the statutes of limitations, yet equity will act by analogy under their restrictions, and the rule is that, when suit is brought after the statutory time, the plaintiff must plead and prove that laches on its part do not exist, and the facts must be specifically and precisely pleaded. *Wills* v. *Nehalem Coal Co.*, 52 Or. 91 (96 Pac. 528) ; *Wilson* v. *Wilson*, 41 Or. 459 (69 Pac. 923).

There is no reason assigned in the complaint why the plaintiff did not act promptly in asserting its claims to the land in question. Meanwhile, the land has passed through several hands to the present defendants. Some of the parties connected with the transaction are dead. The testimony shows that Kees, the mortgagee under whom the defendants claim, is also dead and his estate finally settled. The delay of plaintiff has certainly worked to the prejudice of the present holders of the lands, if its contention is to prevail here. Long after their grantor's

death they are assailed by a claim which could have been urged over 14 years earlier. The plaintiff now claims under the *alias* "Congregational Seminary at Forest Grove," which it would not recognize when cited in the county court, and, while its conduct in that proceeding does not operate as an estoppel, not having been pleaded as such, still it is a circumstance which strongly imputes laches to the plaintiff. The testimony shows that the land brought as near what it was worth as could be expected at a forced sale. It has advanced in value, not only on account of the development of the country in general, but also by reason of the improvements made upon it by the present holders in establishing their homes upon it. If the plaintiff would reap where it has not sown, it should have begun sooner. Its laches render it inequitable now to allow the present defendants to be ousted by a claim so stale.

The decree of the circuit court should be reversed, and the suit dismissed.

---

Argued May 1, decided July 18; rehearing denied September 26, 1911.