[Filed May 10, 1887.]

AURA M. RALEY AND OLIVE I. JOHNS, APPELLANTS, *v.* UMATILLA COUNTY, RESPONDENT.

COUNTIES—POWER TO TAKE REAL PROPERTY.—By general statute, "each county has power to purchase and hold for the use of the county lands lying within its own limits." *Held*, that under this statute the county of Umatilla had the capacity to take and acquire the legal title to the premises in controversy.

COUNTY'S CAPACITY TO TAKE CANNOT BE ATTACKED BY GRANTOR OR HIS HEIRS.—By the delivery of the deed to the county, the grantor divested himself of title. Whether by taking such title the county violated or abused its powers does not concern the grantor or his heirs. If raised at all, that question must be made by the State, and not by a private party.

CONDITION SUBSEQUENT—DEFINED.—To create a condition subsequent in a deed, apt words are necessary, such as "on condition," "provided always," "if it shall so happen," and the like.

CASE IN JUDGMENT.—A deed to the defendant made by Aura M. and her former husband, which contained the following clause: "The parties of the first part covenant to and with the party of the second part, that they will warrant and defend the same against all claims whatsoever to the use and benefit of the parties of the second part, for the special use *and none other* of educational purposes, and upon which block shall be erected a college or institution of learning free from all sectional or political influences;" *held*, not to create an estate upon condition subsequent.

REMEDY IN CASE OF CONDITION BROKEN.—If a condition subsequent be broken, the party entitled may re-enter, and if necessary, regain his estate by action, but equity will not aid him.

TRUST, UNCERTAINTY OF BENEFICIARIES IN CASE OF CHARITABLE.—In case of a public charitable trust, it is not necessary to its validity that the beneficiaries should be known. It is the use to which the property is to be applied and not the particular persons to be benefited which the law regards.

PUBLIC CHARITABLE TRUSTS.—Such trusts are generally favored and liberally construed by the courts.

APPEAL from Umatilla County.

*Robt. J. Slatar,* and *Ramsey & Bingham,* for Appellants.

*Cox & Minor,* and *Cox, Smith & Teal,* for Respondent.

STRAHAN, J.—The object of this suit is to quiet plaintiffs' title to "College Block," being block No. 12, in the town of Pendleton, Umatilla County, Oregon. The defendant demurred to the plaintiffs' amended complaint, and to each of the alleged causes of suit therein, which demurrer was sustained by the court and the suit dismissed, from which decree this appeal is taken.

The plaintiffs state the interest which they claim in said real property, and then allege the defendant's title, so that .on the complaint the main facts relied upon by the respective parties are before us. It appears from the complaint that on and prior to the fifth day of December, 1868, Moses E. Goodwin was the owner in fee of the real property in controversy, and on that date he, with the plaintiff Aura M. Raley, who was then his wife, executed and delivered to the defendant a deed, whereby, in consideration of one dollar to them in hand paid by the party of the second part, the receipt of which sum was thereby

acknowledged, they granted, bargained, sold, and delivered unto
the said party of the second part, said Umatilla County, the real
property in controversy.   The *habendum* clause of said deed is
as follows: "To have and to hold the said block of ground with
all the appurtenances thereunto belonging unto the said party of
the second part forever; and said parties of the first part do
hereby covenant and agree with said party of the second part
that they are the true owners of said premises in fee-simple, at
the ensealing of these presents, and that they will warrant and
defend the same against all claims whatsoever to the use and
benefit of the parties of the second part, for the special use,
and none other, of educational purposes, and upon which block
shall be erected a college or institution of learning free from all
sectional or political influence."

It further appears from the complaint that the plaintiffs have
succeeded to all the estate or interest of said Moses E. Goodwin
in said property, if any, by inheritance, three fourths thereof to
said Olive L. and one fourth to said Aura M., and said Aura
M. also claims dower in said property.   It also appears from
the complaint that before the commencement of this suit, the
plaintiffs entered into the possession of said property as for con-
dition broken, and are now in the possession thereof.

1. *Power of counties to hold land.*   Upon the argument, appel-
lants' counsel insisted that Umatilla County had no power or
capacity to take title to the property in controversy, or to receive
said deed; and that therefore plaintiffs' title was unaffected by
reason of the attempted execution and delivery of the same.   This
is the first question demanding our attention, for the reason that
if this objection is well taken it renders the consideration of
others unnecessary.   By the statute of this State relating to the
corporate power and capacity of the several counties therein it is
provided : " That each county shall continue to be a body politic
and corporate for the following purposes, to wit, to sue and be
sued ; to purchase and hold for the use of the county lands lying
within its own limits, and any personal estate; *to make all neces-
sary contracts, and to do all other necessary acts in relation to
the property and concerns of the county.*" (Gen. Laws, 535,

§ 1.)    Also by sections 346 and 347 *counties* are classed as *public corporations.*    They are public, for the reason they are designed as agencies in the administration of civil government, and they possess and can exercise such powers as have been conferred upon them by the legislature and none others.    By the terms of the section above quoted a county may purchase and hold *for the use of the county* lands lying within its own limits.    Counsel for the appellants claim that the term "for the use of the county" is to be taken as a limitation upon the power of the county to take, and that therefore, unless it plainly appears that the deed is taken for some purpose or object which the legislature had previously pointed out or authorized by some act, the grant is a nullity and confers no title.    I doubt the correctness of this construction.    It is harsh, and in many instances, if rigidly applied, might tend to defeat the very object of the legislature in the creation of such corporations.    While the subject is not entirely free from difficulty, and it is conceded there is a conflict of authorities on the subject, still the later and better view is that both counties and cities may take land by purchase, gift, or devise under charters and statutes of the same legal import as our own.    *Chambers v. City of St. Louis,* 29 Mo. 543, fully sustains such a conveyance.    Under the statute of that State all corporations had power "to hold, purchase, and convey such real estate as *the purposes of the corporation shall require,* not exceeding the amount limited in its charter."    It was further provided in said act that "no corporation shall possess or exercise any corporate powers, except such as shall be necessary to the exercise of the powers so enumerated and given."    By the charter of the city of St. Louis the city was authorized to "purchase, receive, and hold property, real and personal, within said city, and may sell, lease, or dispose of the same *for the benefit of the city;* and may purchase, receive, and hold property, real and personal, beyond the limits of the city, *to be used for the burial of the dead of the city;* also for the erection of water-works to supply the city with water, and also for the establishment of a hospital for the reception of persons infected with contagious and other diseases; also for poor-house, work-house, or house of correction, and may

sell, lease, or dispose of such property *for the benefit of the city."*
The statute was silent on the subject of devises. Under these
provisions of the charter Bryan Mullanphy made his will, whereby
he bequeathed " one equal undivided one third of all my property,
real, personal, and mixed, I leave to the city of St. Louis, in the
State of Missouri, in trust, to be and constitute a fund to furnish
relief to all poor emigrants and travelers coming to St. Louis on
their way *bona fide* to settle in the West." Much of the real prop-
erty bequeathed was beyond the limits of the city, and it was not
claimed that it was intended or could be used for any of the pur-
poses contemplated by the charter; but the title of the city under
the will was sustained. The court said : " There being a right
in the city to purchase, if there is a capacity in the vendor to
convey, so soon as the conveyance is made, there is a complete
sale; and if the corporation in purchasing violates or abuses the
power to do so, that is no concern of the vendor or his heirs.
It is a matter between the State and the city. The law is only
directory in relation to a corporation taking lands. It imposes
no penalty, nor does it in terms avoid the conveyance. No-
where is a corporation in express terms prohibited from taking
and holding lands. The city is duly incorporated with author-
ity to hold, purchase, and convey such real and personal estate
as the purposes of the corporation shall require; and if, in hold-
ing and purchasing real estate, she passes the exact line of her
power, it belongs to the government of the State to exact a for-
feiture of her charter, and it is not for the courts, in a collateral
way, to determine the question of misuser by declaring void con-
veyances made in good faith. In this view of the subject we are
fully sustained by the authorities." (*Baird* v. *Bank of Washing-
ton,* 11 Serg. & R. 418; *The Banks* v. *Poiteaux,* 3 Rand. 136;
*Leasure* v. *Hillegas,* 7 Serg. & R. 319 ; Angell on Corporations,
§ 152; *Silver Lake Bank* v. *North,* 4 Johns. Ch. 370.)

And the same case fully sustains the power of the city to exe-
cute the trust created by the will. So in *Craig* v. *Secrist,* 54
Ind. 419, it was held that a county had the legal capacity to take
a devise of the property of a testator as a permanent fund, the
income of which was to be used in educating a specified class of

the children of such county.   In disposing of this branch of the
case the court said:  " It is further insisted by appellants' coun-
sel that the will in this case is void, for the reason that the
trustee named therein is incapable in law to accept the trust
created in and by said will.   It is provided by the fifth section
of the act under which the devisee in this will may be said to be
incorporated, that such corporations 'may prosecute and defend
suits, and have all the duties, rights, and powers incident to cor-
porations, not inconsistent with the provisions of this act.'   (1
Rev. Stats. 1876, p. 356.)   In 1 Perry on Trusts, page 30, sec-
tion 42, it is said: 'That at the present day, corporations of
every description may take and hold  estates as trustees for  pur-
poses not foreign to their own existence.'   And in section 43, the
same writer says:  'But if the trusts are within the general scope
of the purposes of the institution or the corporation, or if they
are collateral to its general purposes, but germane to them, as if
the trust relates to matters which will  promote and aid the gen-
eral purposes of the corporation, it may take and  hold and be
compelled to execute them if it accepts them.   Thus, towns,
cities, and parishes may take and hold  property in trust for the
establishment of colleges, for the purpose of  educating the poor,
. . . . and for the support of schools.'   The text of this writer
is abundantly supported by the authorities he cites.   Certainly,
the purposes of the trust created by the will now being con-
sidered, are not foreign to nor inconsistent with the general pur-
poses for which the devisee named in said will was created a
corporation.   Rather, it seems to us, will the trust in said will,
considered in its relation to the objects of said trust, promote and
aid the general purposes of said corporation.   In our opinion,
therefore, the devisee named in said will, the county of Owen in
its corporate capacity, is capable of holding as trustee the estate
devised to it in and by said will."   In addition to the author-
ities already noticed, the following cases also sustain the authority
of a public corporation to take and hold the title to real prop-
erty, especially where it is in furtherance of some public trust
or duty:  *McDonough* v. *McDonough*, 15 How. 367; *Vidal* v.
*Gerard's Ex'rs*, 2 How. 127 ; *Bell County* v. *Alexander*, 22 Tex.

350; *Coggeshall* v. *Pelton*, 7 Johns. Ch. 292. But aside from these authorities, the case of *Brown* v. *Brown*, 7 Or. 285, it seems to me, fully sustains the power of a public corporation in this State to take and hold property in trust for a charitable or public purpose. By his last will Cyrus Olney disposed of his property as follows:—

"1. I bequeath and devise all my personal property and real estate that is capable of being disposed of by will to Jackson G. Hastler and Henry S. Aiken, in trust, first, to pay all my debts; and second, to hold the rest due in perpetuity for the benefit of the town of Astoria, in the county of Clatsop, and State of Oregon."

In sustaining this bequest the court said: "At the time the will was made, the charter of the town of Astoria gave it authority to 'purchase, hold, and receive property, real and personal, within said town for public buildings, school purposes, and town improvements.' Also, to purchase, receive, and hold property within and beyond the limits of the town, to be used for burial purposes, and for the reception of persons affected with contagious diseases, and for work-houses and houses of correction, and for the construction of water-works to supply the town with fresh water; and to lease, sell, and dispose of the same for the benefit of the town. . . . . If the devise had been made directly to the town of Astoria, we think it would have been valid in law. It was equally so when devised to Hastler and Aiken in trust for the benefit of the town." And Judge Dillon gives the sanction of his name to this view of the subject. He says (2 Dillon on Municipal Corporations, § 566): "Thus a conveyance of land to a town or other public corporation for benevolent or public purposes, as for a site for a school-house, city or town house, and the like, is based upon a sufficient consideration, and such conveyances are liberally construed in support of the object named." But if the premise contended for by the appellants were conceded, the conclusion which they seek to draw from it would not follow. The statute plainly confers upon counties the power to acquire and hold real property for certain purposes, and the appellants' contention is that this deed conveys property to the county outside of and for other and different purposes than those specified in the

statute.   This is a question which these plaintiffs cannot be per-
mitted to raise, and in which they have no interest.   That could
only be done at the instance of the State.   (2 Dillon on Municipal
Corporations, § 574; *Trustees of Davidson College* v. *Executors
of Maxwell Chambers*, 3 Jones Eq. 253; *Goudie* v. *N. W. Co.* 7
Pa. St. 253; *Land* v. *Coffman*, 50 Mo. 243.)

2. *Condition in a grant.*   But conceding that the deed in
question passed title to the land in controversy to defendant,
appellants' counsel insist that it was an estate upon a condition
subsequent, and that the condition not having been performed,
the estate terminated upon re-entry.   The determination of this
question, therefore, becomes necessary.   The defendant may have
acquired title by the deed, or the appellants may be precluded
from claiming that defendant had not legal capacity to take the
land for the particular purposes specified in the deed, still, if the
estate was upon a condition subsequent, and that condition has
not been performed, the plaintiffs might lawfully re-enter and
repossess themselves of the estate granted, and thus terminate
the estate of the grantee.

An estate upon condition is "one which is made to vest, to be
enlarged or defeated upon the happening or not happening of
some event." (Tiedman on Real Property, §§ 271, 272; Wash-
burn on Real Property, p. 2.)   "The condition which is to affect
the estate may be express or implied, and it may be precedent or
subsequent.   An express condition, otherwise called a condition
in deed, is one declared in terms in the deed or instrument by
which the estate is created.   An implied, or a condition in law,
is one which the law implies either from its being always under-
stood to be annexed to certain estates, or as annexed to estates
held under certain circumstances.   Conditions precedent are, as
the term implies, such as must happen before the estate depend-
ent upon them can arise or be enlarged, while conditions subse-
quent are such as when they do happen defeat the estate." (2
Washburn on Real Property, p. 3, § 2.)

To create a condition in a grant, apt and appropriate words
ought to be used, such as "on condition," "provided always,"
"if it shall so happen," or "so that the grantee pay, etc., within

a specified time," and the like.   Therefore, "the grant of a lot of land to set a meeting-house thereon does not imply a condition.   And an estate upon condition cannot be created by deed, except where the terms of the grant will admit of no other reasonable interpretation.   Therefore, reciting in a deed that it is in consideration of a certain sum, and that the grantee is to do certain things, is not an estate upon condition, not being in terms upon condition, nor containing a clause of re-entry or forfeiture. And yet these words may create a condition *if a right of re-entry is reserved* in favor of the grantor in case of failure to carry out the intention thus expressed."   (2 Washburn on Real Property, pp. 4, 5.)

In *Taylor* v. *Binford*, 37 Ohio St. 262, a conveyance for the use of school purposes *only* was held not to create a condition. So in *Carter* v. *Branson*, 79 Ind. 14, the words in the *habendum* clause of the deed, "to have and hold for the use of said religious society of friends so long as it may be needed for meeting purposes, then said premises to fall back to the original tract," did not create a condition subsequent.   And the like doctrine is very clearly announced in *First Methodist Episcopal Church of Columbia* v. *Old Columbia Public Ground Company*, 103 Pa. St. 608. So, also, in *Packard* v. *Ames*, 16 Gray, 327.   "A deed of land to a number of persons incorporated as a religious society, *habendum* to them and their heirs and assigns, and to each and every person who may hereafter become lawful owners and proprietors of a pew in a meeting-house *to be built* and erected thereon, and which may and shall afterwards be rebuilt thereon by the said proprietors and their successors, to the use and behoof of the said proprietors for the said purpose, and of each and every lawful owner and proprietor of a pew or pews in the meeting-house, to be built and rebuilt on the said lot of land forever, without any clause providing for forfeiture or re-entry, is not a grant upon condition that a meeting-house shall be erected and maintained on the land conveyed."   So a grant of land upon a valuable consideration, upon trust that the trustee "shall at all times permit all white religious societies of Christians, and the members of such societies, to use the land as a common burying-

ground, and for no other purpose, was not upon condition subsequent." (*Brown* v. *Caldwell*, 23 W. Va. 187.) Neither is a grant of land which has been used as a burying-place to a town "for a burying-place forever," in consideration of love and affection, "and divers other valuable considerations," a grant upon condition subsequent. And the like doctrine is announced in *Thornton* v. *Tramell*, 39 Ga. 202; *Bisley* v. *McNeice*, 71 Ind. 434; *Ayer* v. *Emery*, 14 Allen, 67. Our conclusions on this point are strengthened by the fact that the appellants are invoking a technical rule of the common law, which rule has never been favored by the courts, but is always construed strictly. (*Emerson* v. *Simpson*, 43 N. H. 475; *Woodworth* v. *Payne*, 74 N. Y. 196; *Page* v. *Palmer*, 48 N. H. 385; *Godberry* v. *Shepherd*, 27 Miss. 203.)

3. *Remedy for breach of condition.* The counsel for appellants upon the argument claimed that the defendant was bound by the terms of the deed, in order to save the land conveyed from forfeiture, to erect thereon "a college or institution of learning free from all sectional or political influence"; and that, inasmuch as there is no law authorizing said county to apply any of the funds under its control to such a purpose, the grant was necessarily defeated. Conceding now that the words in the *habendum* clause of the deed created a condition subsequent, the conclusion which counsel drew from the fact, it seems to me, does not follow. In such case numerous authorities hold that if the condition is impossible to be performed, or illegal, it is void, and the grantee would take the estate freed from the condition. (*Taylor* v. *Sutton*, 15 Ga. 103; 2 Washburn on Real Property, p. 8, § 6.) But it is not now necessary to decide that question. It has thus far been assumed that equity had jurisdiction in this case. This assumption has been allowed only at the request of counsel mutually made upon the argument; but the remedy of the plaintiffs was at law upon their theory of the case. If condition subsequent be broken, the party entitled may re-enter, and if necessary have an action to regain his estate, but equity would not entertain jurisdiction for such purposes. The other matters pleaded in the complaint, whereby it is sought to present a case of equitable

cognizance, are wholly insufficient for that purpose, and do not require special notice.

Let the decree appealed from be affirmed.

On petition for rehearing.

STRAHAN, J.—Appellants' counsel have filed a petition for a rehearing in which it is insisted that the land in controversy was granted for educational purposes and for none other. This is conceded; the deed expresses that upon its face; but it is nowhere alleged that it is being used for any other purpose, and if it were being so used it is probable that the heirs of the grantor have such an interest that they might restrain such unauthorized use of the thing granted. But of this they do not complain. It is the non-user for which they demand a forfeiture. The deed does not fix any time when the land granted must be so used, nor.is the estate limited as to the time when its use shall begin. The grantors, when they made the deed, were chargeable with full notice of all the powers and authority of Umatilla County under the statute. Not having annexed any conditions to the grant at the time it was made, the court ought not to undertake to supply them by implication. It is also urged by counsel for appellants, with much apparent confidence, that this trust is void because those who may be its beneficiaries are uncertain or unknown. But this does not belong to that class of trusts where it is necessary they should be known. It is the use to which the property is to be applied and not the persons benefited which the law regards in such case. In other words, it is a trust for charitable uses. (2 Perry on Trusts, § 700.) "If in a gift for private benefit, the *cestuis que trust* are so uncertain that they cannot be identified, or cannot come into court and claim the benefit conferred upon them, the gift will fail, and revert to the donor, his heirs or legal representatives. But if a gift is made for a public charitable purpose, it is immaterial that the trustee is uncertain or incapable of taking, or that the objects of the charity are uncertain or indefinite. Indeed, it is said that vagueness is in some respects essential to a good gift for a public charity, and that a public charity begins where uncertainty in the recip-

ient begins. (2 Perry on Trusts, § 687.) Trusts of this character have been generally favored and liberally construed by the courts. Such benefactors will not be defeated or overthrown on slight or trivial grounds.

The petition for a rehearing will be overruled.