Argued September 30; affirmed November 10, 1936

DeMARTINI ET AL. *v.* HAYHURST ET AL.

(62 P. (2d) 1)

*Ralph S. Hamilton* and *Allan A. Bynon,* both of
Portland (Bronaugh, Hamilton, Bynon & Bronaugh, of
Portland, on the brief), for appellants.

*Prescott W. Cookingham*, of Portland (Cookingham & Hanley and R. G. McCarty, all of Portland, on the brief), for respondents.

ROSSMAN, J. As will be observed from the preceding statement, this appeal presents no issue of facts. The facts are set forth in the complaint and the answer. All averments of the complaint are admitted by the answer. Plaintiffs filed a demurrer to the latter which was overruled, and, the plaintiffs declining to plead further, the decree was entered. We shall now set forth a synopsis of the complaint and follow it with a synopsis of the answer. Omitting mention of facts already indicated in the preceding statement, the complaint alleges that on October 26, 1891, William S. and Caroline A. Ladd owned a tract of land in the city of Portland which is now known as Ladd's Addition. October 26, 1891, the Ladds prepared and recorded a plat of the

tract and subdivided it into blocks, lots, avenues, parks, etc. Parallel to the street lines upon the plat are blue lines, to which the instrument of dedication refers as building lines. On the following page is a copy of the plat.

October 26, 1891, the Ladds executed a deed for the dedication of the property, from which we quote the following:

· ''The blue lines drawn on said map within the limits of said blocks at the distance of twenty feet from and parallel to the adjacent boundary lines of the avenues laid out thereon and the like lines drawn on said map within the said limits at the distance of fifteen feet from and parallel to the adjacent boundary lines of the streets laid out thereon shall be known and designated as 'building lines'.

''And we do hereby dedicate to the use of the public for highways, forever all of such parts of said tract designated on said map as avenues, streets and alleys, respectively, and we also dedicate to the use of the public as and for public parks and for that purpose alone, all of such parts of said tract as are designated in said map, 'Central Park,' 'North Park,' 'South Park,' 'East Park,' and 'West Park,' respectively. This dedication of the said tracts designated 'Central Park,' 'North Park,' 'South Park,' 'East Park,' and 'West Park,' is upon the express condition that the said tracts shall not be cut, crossed, or bi-sected by any way or rights of way for any street railway or any other railway of any kind or description whatsoever and in case any of such tracts shall at any time in the future be cut, crossed or bi-sected by any such way or right of way, then in such case  *  *  *.''

The blue lines paralleling the avenues are at a distance of 20 feet inside the property lines, and those paralleling the streets are 15 feet inside the property lines. Not less than 300 dwelling houses have been constructed in the subdivision.

The plaintiffs own a fraction of lots 7 and 10 in block 8 (on Elliott Avenue). The date of their acquisition of title is not disclosed. Upon these lots the plaintiffs constructed a dwelling house, adhering to the building lines in so doing. The defendant Hayhurst owns lots 1, 2 and 3, block 12 (at the intersection of Ladd and 12th Avenues), which is a triangular-shaped

piece of property. East Clay street, which is the southerly boundary of his property, was extended into Ladd's Addition after the original plat had been filed. His property is leased to the defendant Shell Oil Company. The latter subsequently constructed upon the leased property "a gasoline and oil service station with appurtenant buildings for use in connection therewith", and has ever since operated the property as a filling station. The complaint declares: "The said buildings and structures were erected upon the said real property in violation of the above-mentioned building restriction line or 'blue line'," and in much detail specifies the violations. The defendants Hayhurst, according to the complaint, "will enter into a further lease and agreement with the defendant Shell Oil Company for the erection and construction of yet other and further buildings and structures in violation of the said building restrictions in the following particulars  *  *  *''. The complaint concludes with an averment that the defendants are familiar with the demands of the building lines. It alleges that these violations "now do, and will continue to, cause great loss and damage to the property of the plaintiffs, and of other owners of property in said addition, in that the property will be rendered less desirable for residential purposes, and less valuable and useful to the owners thereof".

The answer, as already indicated, admits all of the averments of the complaint. We shall now review the four affirmative defenses, omitting mention of facts previously set forth in this review. The first alleges that the gasoline service buildings upon the property owned by the defendant Hayhurst were constructed March 7, 1923, and that "ever since said date the defendant Shell Oil Company has used and occupied said premises and

structures and improvements thereon openly and adversely, with the full and complete knowledge of the plaintiffs, and neither the plaintiffs nor any other residents of Ladd's Addition have ever objected thereto". This defense concludes with an affirmation that, by reason of plaintiffs alleged laches, it would be inequitable to compel the removal of the buildings. The second affirmative defense alleges that zoning ordinances enacted by the city of Portland on September 24, 1924, classified defendants' property in Zone 3, permitting its use for dwelling house purposes, apartment houses and "business uses such as stores, filling stations and similar uses". This portion of the answer alleges that when this classification was made the plaintiffs made no objection. This portion of the answer also avers that defendants' property is triangular in shape (110 by 125 by 175 feet), and that "it is impossible to occupy and use the same with any filling station or any other business structure without building up to or substantially up to the property line on all three sides". Next, this defense avers that (1) all of the property in Ladd's Addition bordering on Hawthorne Avenue, (2) all of the property across Hawthorne Avenue from it, (3) all of the property in Ladd's Addition bordering on 12th street, and (4) all of the property across 12th street from it is classified in Zone 3. The third affirmative defense avers that when Ladd's Addition was platted it "consisted of open fields and meadow land and the surrounding property was entirely undeveloped. It was then contemplated that the addition would serve as a high-class, close-in suburban residential addition and there was no residence or business development of any consequence in that entire district.   *   *   *   However, since then the conception of a high-class residence district has changed materially." The answer then sets

forth the alleged shortcomings of Ladd's Addition to meet the demands of a "present-time, high-class residence district". This portion of the answer also avers: "Hawthorne Avenue on the north, Division street on the south, 12th Avenue on the west of Ladd's Addition and Ladd Avenue running diagonally through Ladd's Addition are all heavy traffic arteries, and particularly in the corner of Ladd's Addition which is occupied by defendants' property, the traffic is very heavy and the construction of a dwelling house on or near that property would be undesirable for the reasons above indicated. Changes in the conception of building restrictions suitable for residence districts, changes in character of the surrounding property and changes in the location of residence districts, have all made it inadvisable, inexpedient and improper to observe the building restrictions in Ladd's Addition." This averment adds that 182 structures in the Addition violate the building lines, and that "particularly in the vicinity of the property covered by this case, the district is exclusively for business purposes and building restrictions have been generally disregarded. Most of said structures have been so located in violation of the so-called blue lines for a great many years, all without protest or objection on the part of the plaintiff or any other resident of Ladd's Addition. * * * There are now located in Ladd's Addition 10 store buildings, 7 apartment houses, 6 commercial garages and filling stations, 4 churches, 2 schools and a number of duplex apartments. This is particularly true of the property in Ladd's Addition along Hawthorne Avenue and East 12th Avenue". This portion of the answer also alleges that "the entire neighborhood in which Ladd's Addition is located has changed in character, particularly the neighborhood near the corner of East 12th Avenue and Hawthorne

Avenue where the property covered by this controversy is located'' and concludes with an averment that the property in Ladd's Addition, particularly the defendants', is no longer adaptable for ''any purposes except business and apartment house purposes''. The fourth defense avers that before any substantial portion of the lots in Ladd's Addition were conveyed the restrictions created by the building lines were cancelled and terminated. We shall not review these allegations further because similar averments are reviewed at length in our decision entitled *Menstell et al. v. Johnson et al.,* 125 Or. 150 (262 P. 853, 266 P. 891, 57 A. L. R. 311). We refer to that decision as an indication of the nature of the averments contained in the fourth affirmative defense.

In the pleadings it is stated that when Mr. Ladd platted Ladd's Addition he anticipated that it would become a desirable residential district. By glancing at the above map, it will be observed that he chose a design peculiarly adapted to residential purposes. At the center of the subdivision is a park. A short distance from it are North, South, East and West Parks. The instrument of dedication provides that if any railway track ever encroaches upon any of these parks the title to the land comprising the park shall revert to the dedicator. Since no railway can traverse the subdivision without entering upon one or more of these five small parks, Mr. Ladd in this way effectively excluded railways from the subdivision. This circumstance among others indicates that he intended that the tract should forever be residential. It seems reasonable to infer that Mr. Ladd believed that the lot which is now owned by the defendants would be one of the choicest residential lots in the subdivision, since it is at what might be deemed the gateway of the subdivision. But the growth

of the city of Portland and the development of automobile traffic have created conditions that were not foreseen in 1891. Hawthorne Avenue has become an important thoroughfare and from 12th Avenue west contains nothing but commercial and industrial structures. From 12th Avenue east the commercial buildings along Hawthorne Avenue are fewer in number, but between 12th and 20th Avenues there are several apartment houses, store buildings and commercial garages. Twelfth Avenue between Hawthorne and Division street carries a volume of traffic and between these two streets are several apartment and business structures on both sides of the street. Ladd Avenue has become a convenient means of approach to the West Side business district for those who live in and southeast of Ladd's Addition. The intersection of Hawthorne, Ladd and 12th Avenues has become, according to the pleadings, a place of local commercial importance. At this intersection there are, besides the two buildings occupied by the defendant Shell Oil Company, two other filling stations, two commercial garages, two apartment houses and a large one-story masonry building which houses a furniture store. Seven of these buildings are in Ladd's Addition, and all of them violate the building lines. Other commercial buildings are near at hand. According to the pleadings, there are no dwelling houses upon the property adjacent to this intersection.

By glancing at the lower left-hand corner of the map it will be seen that East Clay street crosses over a part of block 12 near the southwesterly extremity of that block and terminates at Ladd Avenue. Clay street did not enter Ladd's Addition when the plat of the latter was filed in 1891. Upon being extended it formed the triangular tract possessed by the defendants, which

the pleadings state is unfit for building purposes unless the setback lines are disregarded.

It will be observed that the defendants' property has not been used for residential purposes since March of 1923, for at that time the present commercial structures were erected upon it. The nature of its use, if any, prior to 1923 is not disclosed by the record. But since March, 1923, the defendant Shell Oil Company has continuously used the property for commercial purposes. It is true that the restrictions imposed by the building lines do not limit the use of the property in Ladd's Addition to residential purposes, but, manifestly, they were intended to serve the needs of a residential district since they are detrimental to any other use. The circumstances above reviewed indicate that the defendants' property, due to the extension of Clay street and the commercial character of its immediate surroundings, is no longer suitable for residential purposes. The expectations of Mr. Ladd concerning this lot have not materialized.

The three corners of 12th and Hawthorne Avenues outside of Ladd's Addition which are occupied by commercial structures are not subject to any building line restrictions and are in Zone 3, which permits their use for commercial purposes. The defendants' buildings, as described in the complaint, are two in number; one of them, a rest room, is 11 by 13 feet in ground dimensions, 10 feet high, and the other, a service building, is 14 by 44 feet in ground dimensions, 12 feet high. Besides these two buildings the defendants' property is equipped with gasoline pumps and "a grease hoist" capable of lifting automobiles. The contemplated new construction, according to the complaint, will be the installation of two pump islands each equipped with

four gasoline pumps and canopies. The latter will violate the building line restrictions, as do the two aforementioned structures. But the gasoline filling station immediately across Ladd Avenue on lot 1, block 13, according to the pleadings, also violates the building line restrictions. The owner of that property and the operator of that station have not been made parties defendant. It seems to us that the offensive character of the defendants' violation of the building restrictions is no greater than the offensive character of the violations of the defendants' neighbors concerning which the plaintiffs make no complaint. For instance, on lot 1, block 11, at the intersection of 12th Avenue and Mulberry street, is a one-story masonry store building, the exterior walls of which are upon the property line of both 12th Avenue and Mulberry street, in total violation of the building restrictions. On lots 5 and 6, block 13, is a masonry garage, which like the store building, is built upon the property line, thereby violating the building restrictions upon both Hawthorne Avenue and Maple street. On lots 7, 8 and 11, of block 12, is a three-story masonry apartment building which, in a very substantial manner, violates the building line upon both 12th Avenue and Mulberry street. On lots 2 and 3, block 13, across from the defendants' property on Ladd Avenue, is another apartment house. It extends two and one-half feet beyond the blue line parallel to Ladd Avenue. These violators, as well as the defendants, competitor previously mentioned, have not been made parties defendant. A grant of the relief sought by the complaint obviously will not restore this single item of property to a residential status. Nor will a grant of such relief materially affect the plaintiffs' right for light, air and view so long as the other violators remain unmolested.

It is very evident that a change has taken place in the use to which the property at the intersection of 12th, Hawthorne and Ladd Avenues is being subjected. Commercial uses have supplanted residential uses. The new structures are disregarding the building lines. While these changes were in progress neither the plaintiffs nor any other resident in Ladd's Addition offered any objection. It seems permissible to infer that the plaintiffs and the other property owners were aware of the changes and that they acquiesced in them.

In *Menstell v. Johnson,* supra, we interpreted the effect of the blue lines and their accompanying language in the instrument of dedication. We held that they created an easement for light, air and view. That suit involved lot 35, block 20, at the southeast corner of Elliott and Hazel streets. The surrounding lots were improved with residential structures exclusively. While the defendant in that suit was contemplating the construction of his building and was manifesting a purpose to disregard the building lines, many of his neighbors spoke to him, insisting that he must conform to the building lines. Later, after he had commenced construction and had disregarded the building lines, some of the same protestants served him with written notice of their demands. Notwithstanding these warnings and protests, he proceeded to violate the restrictions. Our decision directed the entry of a decree compelling him to comply with the restrictions. In the present instance, as already indicated, the defendants' structures are not in the course of construction, but were built more than 13 years ago and are almost surrounded with commercial structures, likewise built in disregard of the building lines.

The plaintiffs do not explain why they permitted 13 years to pass after the defendants' buildings were

constructed before they filed this suit; nor do they explain why they overlooked the violations of the defendants' neighbors and singled out only one property owner as the sole wrongdoer. Under these circumstances, we believe the only reasonable interpretations which can be made of the plaintiffs' conduct is that they intentionally waived their right to enforce the building restrictions upon the defendants' property and that adjacent to it. Evidently they preferred to see the property at the intersection of Hawthorne, Ladd and 12th Avenues develop into business property rather than have it reserved for residential purposes. Section 1-202, Oregon Code 1930, being a part of chapter II, title I, of our code, provides:

"The periods prescribed in the preceding section for the commencement of actions, shall be as follows: Within ten years, action for the recovery of real property, or for the recovery of the possession thereof;  *  *  *"

Section 6-103, Oregon Code 1930, provides:

"A suit shall only be commenced within the time limited to commence an action as provided in chapter II of title I of this Code; and a suit for the determination of any right or claim to or interest in real property shall be deemed within the limitations provided for actions for the recovery of the possession of real property;  *  *  *"

These sections of our code are applicable to this suit. The statutory period having passed, the burden was upon plaintiffs to allege circumstances which would excuse their failure to have instituted this suit earlier, if any existed: Pomeroy's Equity Jurisprudence (4th Ed.), § 1441. No such averments having been made, we believe that a conclusion is warranted that the plaintiffs have acquiesced in the defendants' destruction of the building restrictions previously applicable to the lots in

question, and that they have approved the use of this property with structures which disregard the restrictions: *Ewertsen v. Gerstenberg*, 186 Ill. 344 (57 N. E. 1051,. 51 L. R. A. 310). In the decision just cited, a situation very similar to that before us was before the Illinois court. The court held:

"The restrictions against building, so far as they affect this part of Orchard Street, have by the general consent and act of the property owners, acquiesced in by the complainants, been so far disregarded and abandoned and the reserved space so far appropriated to other uses, as to make it inequitable to enforce them against appellant in the use of his said lots."

It follows from the above that the decree of the circuit court is affirmed.

KELLY, BELT and BEAN, JJ., concur.

CAMPBELL, C. J., and RAND, J., concur in the result.

BAILEY, J., specially concurring.

---

BAILEY, J. (specially concurring). The plaintiffs here are seeking equitable relief. Inasmuch as they have not acted promptly upon discovery of the violation by the defendants of the building restrictions, plaintiffs are guilty of such laches as prevents their asserting an equitable right to have those restrictions enforced: 18 C. J., page 401, § 460. It is my view that § 6-103, Oregon Code 1930, is not applicable to the facts in this case.