Argued November 17, affirmed December 22, 1975

ALLIED VETERANS COUNCIL, *Appellant, v.*
KLAMATH COUNTY ET AL (No. 74-156 E),
(CA 4233), *Respondents.*
544 P2d 190

*Quentin D. Steele,* Klamath Falls, argued the cause and filed the brief for appellant.

*Robert D. Boivin,* Klamath Falls, argued the cause for respondents. With him on the brief were Boivin & Boivin, Klamath Falls.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

LANGTRY, J.

Plaintiff appeals from a decree of the circuit court "barring and estopping" it from asserting any claim to "ownership, use or possession" of the Veterans' Memorial Building located within the city of Klamath Falls, and declaring that defendant Klamath County can "continue to use said Veterans Memorial Building exclusively for governmental purposes."

The complaint, filed April 5, 1974, sought a declaratory judgment decreeing that the Memorial Building be maintained—at county expense—as a clubroom and meeting place for servicemen and ex-servicemen residing in Klamath County. The complaint alleged:

"* * * * *

"II

"At a special session of the Oregon State Legislature in 1920 * * * Chapter 16, Oregon Laws

1920, Section 1 and 2 * * * empowered the Several County Courts in the State of Oregon to expend County funds to erect and maintain a building to be used as a clubroom and meeting place for servicemen and ex-servicemen. * * * The building was to be maintained by the County at its expense.

"III

"On October 13, 1925, Klamath County through its then legally constituted Board of Commissioners implemented the authority granted it by the Oregon State Legislature and authorized construction of a Veterans Memorial Building * * *.

"* * * * *

"VII

"[From the time of its completion in 1926] Klamath County steadily encroached upon the use of the building by servicemen and veterans. * * * [Subsequent to August 1956[①]] the County * * * took complete and exclusive possession of the Veterans Memorial Building and converted said building from a public memorial to a County governmental building and has since that time and now, used the building for County purposes to the

---

① Evidence introduced at trial indicated that at the time the Memorial Building was completed in 1926 Klamath County entered into a lease agreement with American Legion Klamath Post No. 8 which provided, on the condition that the building would be maintained as a meeting place and clubroom for servicemen and ex-servicemen, that the Legion would be entitled to its possession for a term of 50 years extending to February 1, 1976. Despite the fact that Oregon's Attorney General issued an opinion in 1948 in which he concluded that because the Memorial Building had been erected for the use of *all* servicemen and ex-servicemen it could not legally be leased to any particular group or organization of veterans for its exclusive use (23 Op Atty Gen 480 (Or 1946-48)), the parties continued to honor the terms of their agreement until August 1956 when in consideration of a payment by the county of some $25,000 the Legion Post "surrendered" its interest.

complete exclusion of servicemen and ex-service-men in Klamath County.

"\* \* \* \* \*"

After hearing, on January 16, 1975 the circuit court issued the decree from which this appeal has been taken. In a memorandum opinion the court emphasized that its decision was based in large part upon a finding that the Memorial Building had been used exclusively for county purposes since 1956, had been remodeled as office space at some expense to the county in 1971 and 1972, and as a building used for "governmental purposes" presently served a function of "substantial value to all persons in Klamath County, veteran and non-veteran \* \* \*," concluding:

"It has to be assumed that all citizens of Klamath County assume the county was taking over the [Veterans' Memorial] building in 195[6] \* \* \* [F]or [17] years, everyone was presumably satisfied. No protests were ever made known until \* \* \* December 4, 1973. It seems inconceivable to now invite judicial intervention to undo, at a substantial cost, something that everyone thought was a closed issue."

Plaintiff contends that because the Veterans' Memorial Building was constructed pursuant to a statute which authorized the expenditure of public funds by the county for a specific purpose—the building and maintenance of a "clubroom/meeting place" for veterans—the county lacks authority to employ that structure for any other purpose even where the "inconsistent" use is one of general public benefit.

■ As a subdivision or agency of state government, "created by legislative fiat for political and civil purposes \* \* \*," a county has only such powers as are conferred upon it by statute. *Powell Grove Cem. v. Multnomah Co.*, 228 Or 597, 600, 365 P2d 1058 (1961);

*Highway Com. v. Clackamas W. Dist.*, 247 Or 216, 428 P2d 395 (1967). This rule is not entirely accurate where a county has adopted a home rule charter as authorized by Oregon Constitution, Art VI, § 10. Among those powers conferred by the legislature of this state are those of acquiring, holding and managing real and personal property necessary to the proper exercise of any power specifically granted or essential to the purpose of county government.[2]

██ Where property has been lawfully acquired, a county is generally permitted to exercise a broad discretion in its management, a general limitation upon which is the rule that county property must be employed to meet "public" needs. County governing bodies are not, however, always free to manage county property in such a way as to serve *any* valid public purpose. Where a specific tract or building either is held "in trust" for a specific purpose or has been "dedicated" to a particular use, a county—like any municipal corporation—is without power to change the use of that property without either specific legislative direction or, if the dedication is from a private source, appropriate consent of the dedicator. *Raley v. Uma-*

---

[2] ORS 203.120 provides in relevant part:

"The county court has the authority and powers pertaining to county commissioners to transact county business, as follows:

"(1) To provide for the erection and repairing of courthouses, jails and other necessary public buildings for the use of the county.

"(2) To provide offices and furniture, books, stationery, fuel and light therefor, for the sheriff, county clerk and treasurer or other county officers, and county law library.

"* * * * *

"(9) To have the general care and management of the county property, funds and business, where the law does not otherwise expressly provide.

"* * * * *."

*tilla County,* 15 Or 172, 13 P 890, 3 Am St R 142 (1887); *City of Klamath Falls v. Flitcraft,* 7 Or App 330, 490 P2d 515 (1971), Sup Ct *review denied* (1972); 38 Am Jur 164, Municipal Corporations § 485.

The threshold question here is, therefore, whether, as plaintiff alleges, the Veterans' Memorial Building was acquired by Klamath County under circumstances sufficient to impose a "trust" upon that property requiring that it be used solely as a veterans' clubroom/meeting room.

It is undisputed that the Veterans' Memorial Building was constructed under authority of Oregon Laws 1920, ch 16 (Oregon Laws §§ 3199-3200 (Olson 1920); Oregon Code 1930, §§ 27-109 - 27-110; §§ 86-119, 86-125, OCLA) which in part authorized counties to draw upon county funds to

"* * * [erect] and [maintain] a building to be used as a clubroom and meeting place for service and ex-service men of the army, navy and marine * * *

"* * * * * *

"The county courts * * * may receive financial aid and assistance from municipalities of the state or donations from the public in the construction of such * * * building * * * and such property shall belong to the county and be used for the purposes herein provided."

Amended insignificantly during subsequent legislative sessions (Oregon Laws 1931, ch 17, § 1; Oregon Laws 1945, ch 395, § 1), the Act was eventually "repealed" by the legislature in Oregon Laws 1947, ch 595, § 4. As part of that same chapter, however, the legislature also enacted a measure which authorized counties, upon the application of two or more recognized veterans' organizations, to

"* * * pay out of county funds such amounts

as the respective county courts may deem to be necessary or advisable to assist in the construction or acquisition of buildings to be used as club rooms and meeting places for service and ex-service veterans of any war in which the United States was a participant. * * * [S]aid buildings shall be made available for the use of any veterans' organizations and their auxiliaries located in the city, town or community where any such building is constructed or acquired."

■■ Where a statute is repealed by a "new" statute which relates to the same subject matter and which reenacts provisions of the earlier statute, and the repeal and reenactment occur simultaneously, the generally accepted rule is that the provisions of the "old" statute actually reenacted are not interrupted in their operation by the repeal, but should be regarded as having been continually in force from the date of their original enactment.[9] Both the 1920 Act, pursuant to which the Veterans' Memorial Building was erected, and the 1947 Act which "replaced" it authorized counties to make limited expenditures from county funds to construct buildings *to be used as clubrooms and meeting places for servicemen and veterans.* The limitations imposed upon the use of the buildings constructed under the authority of the 1920 Act were not, therefore, eliminated by the legislative action taken in 1947.

At the time Oregon's compiled laws were revised in 1953 Section 1 of Chapter 595 (the 1947 Act) was also "reenacted" by the addition of ORS 408.540 which provides that:

"All buildings acquired or constructed by county courts pursuant to chapter 595, Oregon Laws

[9] State ex rel. Carson v. Kozer, 108 Or 550, 217 P 827 (1923); Gostevskyh v. Kalugin, 7 Or App 623, 492 P2d 826 (1972); *see* Annotation, 77 ALR2d 336 (1961).

1947, shall be made available for the use of any veterans' organizations and their auxiliaries located in the city, town or community where any such building is located."

■ Review of this statutory history leads inescapably to the conclusion that Klamath County does, in fact, have an obligation to make its Memorial Building "available for the use of any veterans' organizations and their auxiliaries * * *."

Defendants take the position, however, that because no veteran or veterans' organization either objected to its use or attempted to assert any right of possession for a period of some 17 years following the point at which the Memorial Building was begun to be employed exclusively for "governmental purposes" any interest to which plaintiff might otherwise be entitled should be barred by the equitable doctrines of estoppel and/or laches.

■ In response plaintiff correctly points out that, if laches is to be successfully interposed as a bar to the relief it seeks, more than a prolonged delay in the initiation of the litigation need be shown. The established rule is, in fact, that the plaintiff against whom the defense is asserted must have had full knowledge of all the facts during the period of delay, and that the delay must have resulted in prejudicing the defendant to the extent that it would be inequitable to afford the relief sought by the delaying party. *Stephan v. Equitable S & L Assn.,* 268 Or 544, 522 P2d 478 (1974); *Willis v. Stager,* 257 Or 608, 481 P2d 78 (1971); *Oliphant v. French,* 256 Or 341, 472 P2d 275 (1970); *Kelly v. Tracy,* 209 Or 153, 305 P2d 411 (1956).

■ The prejudice resulting from plaintiff's delay in this case is, however, apparent. Klamath County has, since it took sole possession of the Veterans' Building

in 1956, expended not insignificant funds remodeling it as office space; if plaintiff were to prevail here the county would be required to relocate its offices and to remodel the building yet a second time in order to make it functional once again as a clubroom and "meeting place"—all at considerable cost. Similarly, where it can be presumed that plaintiff was aware of its right to use the building throughout the 17-year period it was "openly and notoriously" employed as an office building by Klamath County, nothing further would seem to be necessary to establish the "knowledge" which is a requisite to raising the defense.

While courts exercising equitable powers are not strictly governed by statutes of limitations for analogous cases at law, a generally established rule is that those statutes will, in fact, be applied by analogy in equitable suits.[4] Thus, where a suit is commenced after the expiration of the time allowed to bring a corresponding action at law, the plaintiff has the burden of "explaining" the prolonged delay.[5]

This suit was initiated long after any analogous limitations period had expired.[6] Plaintiff has not, however, offered any satisfactory explanation for its delay; under these circumstances the claim is barred by laches.

Affirmed.

---

[4] Hanns v. Hanns, 246 Or 282, 423 P2d 499 (1967); Haggerty v. Nobles, 244 Or 428, 419 P2d 9 (1966); McIver v. Norman, 187 Or 516, 205 P2d 137, 213 P2d 144, 13 ALR2d 749 (1949); Tualatin Academy v. Keene, 59 Or 496, 117 P 424 (1911).

[5] DeMartini v. Hayhurst, 154 Or 663, 62 P2d 1 (1936); Nelson v. Baker, 112 Or 79, 227 P 301, 228 P 916 (1924); Baillie v. Columbia Gold Min. Co., 86 Or 1, 166 P 965, 167 P 1167 (1917).

[6] Both ORS 12.050, which specifically relates to actions "for the recovery of real property, or for the recovery of the possession thereof * * *," and ORS 12.140, which relates to an action "for any cause not otherwise provided for * * *," require that an action be commenced within 10 years following the accrual of the cause.