Myer FELDMAN, Petitioner,

v.

DISTRICT OF COLUMBIA RENTAL
HOUSING COMMISSION,
Respondent,

Belinda J. Dunmire, Intervenor.

No. 82–1294.

District of Columbia Court of Appeals.

Argued July 27, 1983.

Decided Nov. 29, 1985.

Rehearing En Banc Granted and Opinion
Vacated March 19, 1986.

Eric A. Von Salzen, with whom Daniel R. White, Washington, D.C., was on the brief, for petitioner. Stephen A. Goldberg, Washington, D.C., also entered an appearance for petitioner.

Lutz Alexander Prager, Asst. Corp. Counsel, with whom Judith W. Rogers, Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Robert A. Diamond, Washington, D.C., for intervenor.

Before PRYOR, Chief Judge, and NE-BEKER and TERRY, Associate Judges.

TERRY, Associate Judge:

Petitioner seeks review of a decision of the Rental Housing Commission finding him liable for rent overcharges. His main challenge is to the finding of the Commission that the apartment at issue was not exempt from rent control. Petitioner also maintains that the Commission erred in assessing treble damages. We affirm.

I

In August 1980 Belinda Dunmire entered into a lease agreement with petitioner, Myer Feldman, for the rental of a condominium unit, number 820, in a building known as the Carriage House. The monthly rent under the lease was $425.00.

There are 170 condominium units in the Carriage House. At the time Miss Dunmire moved into apartment 820, petitioner owned eight of those units: numbers T-3, 118, 217, 401, 720, 807, 820, and 905. Under both the Rental Housing Act of 1977 ("the 1977 Act") and the Rental Housing Act of 1980 ("the 1980 Act"),[1] the owner of any rental unit could seek an exemption from rent control by filing a "claim of exemption statement" with the Rent Administrator, provided that certain conditions were met.[2] Petitioner, however, never filed such a statement for any of his

apartments in the Carriage House prior to August 1980.

On February 23, 1981, petitioner filed claim of exemption statements for units T-3, 401, 720, and 820. No statements were ever filed, however, for units 118, 217, 807, or 905. Twelve days later, on March 7, petitioner filed a registration statement[3] for all of the eight units he owned in the Carriage House. In the registration statement petitioner asserted that units 118, 217, and 905 were not rental units. He listed his other five units (T-3, 401, 720, 807, and 820) with their maximum monthly rental value. The maximum rent allowable for Miss Dunmire's unit (820) was $252.45 per month. On June 1 petitioner sold unit 720.

On June 29, 1981, Miss Dunmire filed a complaint with the Rental Accommodations Office (RAO), claiming that petitioner was charging her more rent than the law allowed. A month later, on July 29, petitioner filed a new claim of exemption statement for apartment 820. A hearing was then held on the Dunmire complaint before a hearing examiner from the RAO, who concluded that petitioner had failed to meet his burden of demonstrating that Miss Dunmire's rental unit was exempt from rent control.[4] Accordingly, the examiner found that petitioner had knowingly overcharged Miss Dunmire and assessed him treble damages plus interest and a $500 fine. The Rental Housing Commission, on

---

**1.** The Rental Housing Act of 1977, D.C.Law 2-54, 24 D.C.Reg. 5334, D.C.Code §§ 45-1681 through 45-1699.27 (1980 Supp.), was applicable to all rental units in the District of Columbia from March 16, 1978, through April 30, 1981. The Rental Housing Act of 1980, D.C.Law 3-131, 28 D.C.Reg. 326, D.C.Code §§ 45-1501 through 45-1597 (1981), was in effect from May 1, 1981, through April 30, 1985. Insofar as they bear on this case, the two Acts are substantially identical. We shall therefore cite the parallel provisions of both Acts throughout this opinion.

**2.** *See* D.C.Code §§ 45-1686(a)(4)(C) (1980 Supp.), 45-1516(a)(3)(C) (1981).

**3.** Both the 1977 Act and the 1980 Act require every landlord to file with the Rent Administrator a registration statement containing certain information, including the base rent for each

rental unit. *See* D.C.Code §§ 45-1686(d) (1980 Supp.), 45-1516(d) (1981).

**4.** At the hearing petitioner did not testify. The only evidence offered in his behalf was a copy of the July 29, 1981, claim of exemption statement for Miss Dunmire's apartment. Following the hearing, while the record was still open, petitioner submitted a copy of a prenuptial agreement between himself and his wife, indicating that both parties retained exclusive rights in all real property acquired before marriage. Since petitioner's wife also owned some units in the Carriage House, this agreement was apparently offered to prove that he had no interest in those units. Petitioner presented no other evidence.

appeal, upheld the findings and conclusions of the hearing examiner but decided that the $500 fine was inappropriate. Petitioner was ordered to pay Miss Dunmire $6,462.00. That sum has been placed in escrow pending the decision of this court on the instant petition for review.

## II

■ The Commission correctly ruled that Miss Dunmire's rental unit in the Carriage House was not exempt from rent control. The parties below focused most of their attention on the number of units that Mr. Feldman owned, under the mistaken belief that both the 1977 Act and the 1980 Act exempt an owner from rent control if he or she owns four or fewer rental units. That is not the law.

The pertinent part of the 1977 Act, D.C. Code § 45–1686(a)(4) (1980 Supp.), provides that rent control shall apply to every rental unit in the District of Columbia except:

(4) any rental unit in any housing accommodation of four (4) or fewer units, including any aggregate of four (4) units whether within the same structure or not: Provided, that:

(A) such housing accommodation is owned by not more than four (4) natural persons;

(B) none of such owners has an interest, either directly or indirectly, in any other rental unit in the District of Columbia; and

(C) the owner(s) of such housing accommodation shall file with the Rent Administrator a claim of exemption statement which shall consist of an oath or affirmation by such owner(s) of the valid claim to the exemption. The claim of exemption statement shall also contain the signatures of each person having an interest (direct or indirect) in the housing accommodation. Any change in the ownership of the exempted housing accommodation or change in the owner's interest in any other housing accommodation which would invalidate the exemption claim

must be reported in writing to the Rent Administrator within thirty (30) days of such change....

Similarly, the 1980 Act, D.C.Code § 45–1516(a)(3) (1981), exempts:

(3) Any rental unit in any housing accommodation of 4 or fewer units, including any aggregate of 4 units whether within the same structure or not: Provided, that: (A) Such housing accommodation is owned by not more than 4 natural persons; (B) none of such owners has an interest, either directly or indirectly, in any other rental unit in the District of Columbia; and (C) the owner(s) of such housing accommodation shall file with the Rent Administrator a claim of exemption statement which shall consist of an oath or affirmation by such owner(s) of the valid claim to the exemption. The claim of exemption statement shall also contain the signatures of each person having an interest (direct or indirect) in the housing accommodation. Any change in the ownership of the exempted housing accommodation or change in the owner's interest in any other housing accommodation which would invalidate the exemption claim must be reported in writing to the Rent Administrator within 30 days of such change....

The Commission adopted the hearing examiner's conclusion "that the above-cited sections of the Acts grant exemptions to housing accommodations, not rental units." This was a misreading of the statutory language; each statute plainly grants exemptions to rental units, not to housing accommodations and not to landlords. In this case, however, the error was harmless because unit 820 was ineligible for an exemption as a matter of law.

Both Acts define a housing accommodation as "any structure or building in the District of Columbia containing [one] or more rental units and the land appurtenant thereto." D.C.Code §§ 45–1681(f) (1980 Supp.), 45–1503(8) (1981). A rental unit is defined as "any part of a housing accommodation ... which is rented or offered for

rent for residential occupancy...." D.C. Code §§ 45–1681(w) (1980 Supp.), 45–1503(27) (1981). In this case, only the Carriage House itself—the entire building—is a housing accommodation. An individual unit in the Carriage House cannot fit the statutory definition of a housing accommodation because it is not a "structure or building," but only part of a building. Under both the 1977 Act and the 1980 Act, a leased apartment in a condominium building, such as the Carriage House, is not a housing accommodation but a rental unit.

The two Acts make clear that the four-unit rent control exemption, as it affects this case, refers to the total number of units in the building, not to the number of units owned by any one individual.[5] Because the Carriage House—a housing accommodation—contains more than four units, no unit in the building can qualify for the exemption under either Act. Thus it is irrelevant how many units in the Carriage House Mr. Feldman owns; even if he owned just one, it would not be exempt from rent control.[6] His claim of exemption for unit 820 is a nullity.

### III

■ Petitioner makes two arguments in support of his alternative contention that he should be allowed to establish a new rent ceiling. First, he maintains that the conversion of the Carriage House from a rental apartment building to a condominium building in 1979 made apartment 820 a "newly-covered rental unit" under D.C.

---

**5.** The four-unit exemption also "includ[es] any aggregate of [four] units whether within the same structure or not...." D.C.Code §§ 45–1686(a)(4) (1980 Supp.), 45–1516(a)(3) (1981). The only way to read this language consistent with the grammatical context of either statute is to construe it as requiring each unit in an aggregate of four, "whether within the same structure or not," to be in a building containing no more than four units. Since none of Mr. Feldman's Carriage House units are in such a building, this "aggregate" exemption cannot apply to any of them.

**6.** For this reason we disagree with the Commission's conclusion that Mr. Feldman became entitled to an exemption when he sold unit 720 in

Code §§ 45–1690(b) (1980 Supp.) and 45–1520(b) (1981), for which a new rent ceiling may be determined by the landlord. We decline to consider this argument because it was not made before the Commission. *DeLevay v. District of Columbia Rental Accommodations Commission,* 411 A.2d 354, 358 (D.C.1980).

Petitioner's other claim is that substantial physical improvements to the building permitted him to establish a new rent ceiling. The hearing examiner specifically found, however, that there was no evidence of any substantial change or capital improvement to unit 820. The Commission affirmed that finding. To qualify for an adjustment in the rent ceiling based on capital improvements, a landlord must comply with the requirements of D.C.Code § 45–1691 (1980 Supp.) or 45–1521 (1981). Each of these sections requires the filing of a detailed petition with the Rent Administrator certifying that certain things are true. Only after the petition is approved by the Rent Administrator may the landlord increase his rent ceiling to include the cost of capital improvements, amortized over the useful life of the improvements. Because petitioner never filed such a petition, and because there was, in any event, no evidence of any improvement to apartment 820, we reject his argument.

### IV

Miss Dunmire's complaint was filed under the 1980 Act. The remedial section of that statute provides:

---

June 1981. Both the 1977 Act and the 1980 Act give exemptions to rental units, not landlords, and only those rental units which are in four-unit (or smaller) buildings are even eligible for exemptions, provided the other statutory requirements are met.

Moreover, even if it were possible for the Dunmire apartment to qualify for an exemption, petitioner's claim of exemption statement would have to be rejected because he failed to obtain "the signatures of each person having an interest (direct or indirect) in the housing accommodation," as required by D.C.Code §§ 45–1686(a)(4)(C) (1980 Supp.) and 45–1516(a)(3) (1981).

Any person who knowingly: (1) Demands or receives any rent for a rental unit in excess of the maximum allowable rent applicable to that rental unit under the provisions of subchapter II of this chapter; or (2) substantially reduces or eliminates related services previously provided for a rental unit shall be held liable by the Rent Administrator, or Rental Housing Commission, as applicable, for the amount by which the rent exceeds the applicable rent ceiling or for treble that amount and/or for a rollback of the rent to such amount as the Rent Administrator or Rental Housing Commission shall determine.

D.C.Code § 45–1591(a) (1981).[7] The hearing examiner found that petitioner had "knowingly" collected rent in excess of the established rent ceiling. That finding, and the award of treble damages based upon it, were affirmed by the Commission.

▆▆▆▆ The finding of a knowing violation must be upheld if it is supported by substantial evidence. D.C.Code § 1–1510(a)(3)(E) (1981); *see Washington Post Co. v. District Unemployment Compensation Board*, 377 A.2d 436, 439 (D.C.1977). That requirement is met in this case. The registration statement which petitioner filed with the Rent Administrator irrefutably shows that petitioner was aware of the applicable rent ceiling ($252.45) for apartment 820; nevertheless, he charged Miss Dunmire a sum ($425.00) well in excess of that amount, apparently—but erroneously—believing that the apartment was exempt from rent control, or at least entitled to an exemption. His erroneous reading of the statute does not excuse his violation of it. *See Sinclair v. United States*, 279 U.S. 263, 299, 49 S.Ct. 268, 273, 73 L.Ed. 692 (1929). Petitioner "consciously and voluntarily chart[ed] a course which turn[ed] out to be wrong." *Laffey v. Northwest Airlines, Inc.*, 185 U.S.App.D.C.

322, 355, 567 F.2d 429, 462 (1976) (footnote omitted), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). That is enough to establish a knowing violation.[8]

We therefore affirm the award of treble damages.

## V

D.C.Code § 45–1594 (1981) provides:

This chapter [the 1980 Act] shall be deemed to supersede the Rental Accommodations Act of 1975, and the Rental Housing Act of 1977: Except, that a petition filed with the Rent Administrator under the Rental Housing Act of 1977 shall be determined under the provisions of the Rental Housing Act of 1977.

Relying on this language, petitioner argues that because Miss Dunmire did not file complaints under both Acts, she is precluded from seeking relief from any alleged violation of the 1977 Act. Petitioner is wrong.

The 1980 Act altered some administrative procedures and made certain changes in the law regarding future rent increases. Otherwise, however, most of the provisions of the 1977 Act (including all sections relevant to this case) are materially identical to the corresponding provisions of the 1980 Act. The legislative history makes clear, as the Commission states in its brief, "that the 1980 Act was primarily designed to continue rent control in the District of Columbia without disturbing rights that had accrued under predecessor legislation." *See* DISTRICT OF COLUMBIA COUNCIL, COMMITTEE ON HOUSING AND ECONOMIC DEVELOPMENT, REPORT ON BILL NO. 3–321, "RENTAL HOUSING ACT OF 1980," at 2 (October 23, 1980).

▆▆▆▆ In these circumstances we hold that the substantive rights of both landlords and tenants under the 1977 Act were intended to, and did, continue in force under

---

7. By contrast, the 1977 Act does not require a "knowing" violation before treble damages may be awarded. *See* D.C.Code § 45–1699.24(a) (1980 Supp.).

8. Indeed, in *Laffey* the court held that such conduct was enough to establish a willful violation.

the 1980 Act, subject only to procedural changes in the 1980 Act affecting the enforcement of those rights. The governing rule of law, sometimes called the "doctrine of substantial reenactment," is set forth in the leading treatise on statutory construction:

> Provisions of the original act or section which are repeated in the body of the amendment, either in the same or equivalent words, are considered a continuation of the original law. This rule of interpretation is applicable even though the original act or section is expressly declared to be repealed.

1A SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 22.33, at 287 (4th ed. rev. 1985) (footnotes omitted); *accord, Pentheny, Ltd. v. Government of the Virgin Islands,* 360 F.2d 786, 790 (3d Cir.1966); *Kirchner v. Kansas Turnpike Authority,* 336 F.2d 222, 230 (10th Cir.1964); *Haines v. Department of Employment,* 125 Cal. App.2d 304, 270 P.2d 72 (1954); *Allied Veterans Council v. Klamath County,* 23 Or. App. 653, 659, 544 P.2d 190, 194 (1975); *Chesapeake & Potomac Co. v. State Tax Department,* 161 W.Va. 77, 239 S.E.2d 918, 922–923 (1977); *see generally* Annot., 77 A.L.R.2d 336 (1961).

■ Because the 1980 Act was a continuation of, rather than a substitute for, the 1977 Act, Miss Dunmire had the right to file a complaint under the former for relief from alleged violations of the latter, subject only to the procedural requirements of the 1980 Act. Petitioner's argument to the contrary is without merit.

*Affirmed.*